## LUEDERS v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. January 5, 1914.)

No. 2260.

1. CRIMINAL LAW (§ 1156*)—WRIT OF ERROR—REVIEW—ORDERS REVIEWABLE —DENIAL OF NEW TRIAL.

Denial of a motion to set aside a conviction and grant a new trial cannot be reviewed on writ of error.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3067–3071; Dec. Dig. § 1156.*]

2. CRIMINAL LAW (§ 369*)—EVIDENCE—OTHER OFFENSES—BANKRUPTCY.

In a prosecution of a bankrupt for concealing an interest in real property standing in the name of E. from his trustee, it appeared that the bankrupt owned certain property in the name of R., and that he procured her to transfer the same to E., and later procured E. to exchange such property for that in controversy under terms requiring a payment of $1,000 cash. *Held*, that evidence that in February, 1911, he procured a

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

certificate of deposit for $1,200, which he indorsed to E., was admissible, notwithstanding the exchange was not made until the following May, and was not objectionable as tending to show the commission of another offense, to wit, the concealment of the certificate from the trustee; the court having instructed that the only charge in the indictment was the concealment of defendant's interest in the real estate, and, unless the certificate had reference to the defendant's ownership of such property, they should disregard it.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 822–824; Dec. Dig. § 369.*]

3. CRIMINAL LAW (§ 369*)—EVIDENCE—OTHER OFFENSES.

Evidence, relevant to the offense charged in the indictment, is not admissible because it also tends to prove the commission of another offense.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 822–824; Dec. Dig. § 369.*]

4. WITNESSES (§ 393*)—ACCUSED—IMPEACHMENT—CONTRADICTION.

Where, in a prosecution of a bankrupt for concealing certain property from his trustee, he testified that he had at one time owned certain real property in W., which the government claimed had been exchanged for the property in question, the government was entitled to impeach him by showing that in a former proceeding he had testified that he never owned any real estate at W. or any interest therein.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1252–1257; Dec. Dig. § 393.*]

5. WITNESSES (§ 393*)—TESTIMONY AT PRIOR TRIAL—TRANSCRIPT.

Where a court reporter, who had taken defendant's testimony in a prior proceeding on being shown the transcript of his notes, identified the same and testified that he made it and that it was a correct transcript of his notes, it was admissible to show defendant's testimony on such occasion, though the witness further testified that he had no memory or independent recollection of the testimony, and that a reference to the transcript would not refresh his recollection.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1252–1257; Dec. Dig. § 393.*]

In Error to the District Court of the United States for the Southern Division of the Western District of Washington; Edward E. Cushman, Judge.

A. W. Lueders was convicted of willfully concealing certain property from his trustee in bankruptcy, and he brings error. Affirmed.

Elmer M. Hayden and Maurice A. Langhorne, both of Tacoma, Wash., George F. Vanderveer, of Seattle, Wash., and F. D. Metzger, of Tacoma, Wash., for plaintiff in error.

C. F. Riddell, U. S. Atty., of Seattle, Wash., and E. B. Brockway, Asst. U. S. Atty., of Tacoma, Wash.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge. The indictment filed by the United States attorney charged that on or about the 23d day of February, 1912, the defendant, within the Southern Division of the Western District of Washington, while he was a bankrupt under the Bankruptcy Act, did willfully, knowingly, fraudulently, and unlawfully conceal and cause to be concealed from one J. M. Phillips, who was then and there the duly appointed, qualified, and acting trustee in bankruptcy of the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

defendant, a bankrupt, certain property, to wit, certain lands situate in the county of Morrow, state of Oregon (which property was particularly described and set forth in the indictment), of the value of $25,000, to which the estate of said bankrupt then and there had a certain right, claim, and interest.

It appeared from a bill of particulars furnished to the defendant by the government that the manner of concealment of the real estate referred to in the indictment was as follows: The defendant, having bought certain property in the town of Winlock, in the state of Washington, commonly known as the "St. James Hotel property," from one Carl Buege, took title to it in the name of Anna Reinhardt without any consideration moving to the latter therefor; that thereafter the defendant procured Anna Reinhardt, without any consideration therefor, to transfer the property by deed to one E. Maud Everitt; and that said E. Maud Everitt did thereafter trade said property for the real estate set forth and descirbed in the indictment, situate in the county of Morrow, state of Oregon, with the intent and purpose on the part of said defendant to conceal all of the last-mentioned real estate from the trustee in bankruptcy mentioned and named in the indictment.

The jury found the defendant guilty as charged in the indictment, and he was sentenced by the court to imprisonment for the term of nine months.

The first four assignments of error relate to the admission of certain testimony introduced by the government over the objections of the defendant. The objection was that the testimony was incompetent, irrelevant, and immaterial and prejudicial to the rights of the defendant.

[1] 1. The fifth assignment is directed to the refusal of the court to set aside the verdict and grant a new trial. With respect to the latter assignment, it is well settled that the ruling of the trial court denying a new trial cannot be assigned as error. Moore v. United States, 150 U. S. 57, 14 Sup. Ct. 26, 37 L. Ed. 996; Holder v. United States, 150 U. S. 91, 14 Sup. Ct. 10, 37 L. Ed. 1010; Blitz v. United States, 153 U. S. 308, 14 Sup. Ct. 924, 38 L. Ed. 725; Wheeler v. United States, 159 U. S. 523, 16 Sup. Ct. 93, 40 L. Ed. 244; Clune v. United States, 159 U. S. 590, 16 Sup. Ct. 125, 40 L. Ed. 269.

[2] 2. The first two assignments of error relate to the admission by the court of certain testimony over the objection of the defendant, which it is claimed was irrelevant, incompetent, and immaterial.

The first objection was to the testimony of one A. S. Hoonan, assistant cashier of the National Bank at Aberdeen, Wash. The second objection was to the testimony of one Clyde L. Philliber, clerk in the Bank of Ladd & Tilton, at Portland, Or. As the testimony of these two witnesses relate to the same transaction, the objections will be considered together.

The testimony of A. S. Hoonan was to the effect that, while he was acting as teller in the National Bank at Aberdeen, Wash., he sold to the defendant a certain draft. The draft, which was introduced in evidence by the government, was dated February 11, 1911, and was on the First National Bank of Portland, Or., in favor of E. M. Everitt,

for the sum of $1,200. It was signed by A. S. Hoonan, as teller, and was indorsed on the back, "E. M. Everitt."

The testimony of Clyde L. Philliber, a clerk employed in the Bank of Ladd & Tilton, at Portland, Or., was to the effect that on February 13, 1911, the assistant cashier of his bank came to his window with a draft drawn from the United States National Bank at Aberdeen on the First National Bank of Portland, Or., and requested that he give a certificate of deposit to E. M. Everitt; that the assistant cashier wrote out the certificate and the witness countersigned it. The draft theretofore introduced in evidence and identified by the witness Hoonan was then shown to this witness, and he identified his stamp upon it and testified that it seemed to have passed through his department. A certificate of deposit of the Ladd & Tilton Bank, of Portland, Or., dated February 13, 1911, in favor of E. M. Everitt, for $1,200, signed by E. C. Philliber, teller, and Walter W. Cook, assistant cashier, and indorsed on the back, "E. M. Everitt," was thereupon introduced in evidence, and the witness testified that the signatures thereon were those of himself and the assistant cashier, Walter W. Cook.

The charge in the indictment is that the defendant, being a bankrupt, had concealed from his trustee in bankruptcy certain real estate belonging to his estate in bankruptcy, and that this real estate was situate in Morrow county, Or. The bill of particulars furnished to the defendant by the government charged that the defendant, having bought certain property in the town of Winlock, state of Washington, took title to the property in the name of one Anna Reinhardt; that thereafter the defendant procured the said Anna Reinhardt to transfer said property to one E. Maud Everitt; that said E. Maud Everitt, as agent for the defendant, thereafter traded the Winlock property, in the state of Washington, for certain real property situated in Morrow county, Or., and the defendant was charged with concealing this real estate in Morrow county, Or., from his trustee in bankruptcy.

It appeared from the testimony of one P. E. Alvord, who resided in Portland, Or., that he knew the defendant in a business way, and that in April or May, 1911, he met the defendant and Miss Everitt; that he knew that they wanted to dispose of the Winlock property in Washington, and, knowing that certain parties in Eastern Oregon wanted to exchange some wheat land in that locality for property in or near Portland, Or., he brought the parties together and an exchange was made of the property in Winlock, Wash., for the real estate in Morrow county, Or.; that there was a difference between the values of the two properties in this transaction; that the St. James Hotel property was valued at $11,000, and the Oregon property at $25,600, leaving a balance of $14,600, of which latter amount $13,000 was to remain on mortgage, $1,000 was to be paid in cash, and $600 was to be paid in two months from the date of the agreement. It is contended by the government that the circumstances tended to show that the transaction narrated by the witnesses Hoonan and Philliber, concerning the draft of $1,200 on the First National Bank of Portland, Or., and the certificate of deposit in the Bank of Ladd & Tilton, at Portland, Or., was connected with the cash payment of $1,000 involved in the exchange

of the properties related by the witness Alvord and contained in the agreement of the parties. The fact that the draft was purchased on February 11, 1911, and the exchange of the properties was not made until May, 1911, does not necessarily disconnect the two transactions, if the circumstances tended to show that they were connected. The evidence was circumstantial, and it was for the jury to give it only such weight as it was entitled to receive in determining the ultimate question whether the defendant became and was the real owner of the Oregon property. But the objection is that this testimony tended to prove that the defendant was guilty of an offense other than the one charged in the indictment (that is to say, the evidence tended to show that the money represented by the draft and by the certificate of deposit for $1,200 was the property of the defendant); that, if the jury believed this testimony, they might draw the conclusion that his concealment of this property from his trustee in bankruptcy was an offense other than that charged in the indictment; and that such a conclusion would prejudice the jury against the defendant and his defense. With respect to this objection, the trial court advised the jury that the only charge in the indictment was the secreting of the particular real estate described, and, unless the jury believed the transaction, about which this inquiry was being made, concerned the matter charged in the indictment, they were to disregard the testimony of these witnesses. We think this instruction disposed of the defendant's objection to this testimony.

[**3**] Assuming that the testimony did tend to prove the commission of another offense, its admission was not rendered improper if it was relative to the offense charged in the indictment.

In the case of Williamson v. United States, 207 U. S. 425, 451, 28 Sup. Ct. 163, 172 (52 L. Ed. 278), the Supreme Court of the United States disposed of a similar objection in these words:

"The contention that the proof on the subjects just stated should not have been admitted, because it tended to show the commission of crimes other than those charged in the indictment, and consequently must have operated to prejudice the accused, is, we think, without merit, particularly as the trial judge, in his charge to the jury, carefully limited the application of the testimony so as to prevent any improper use thereof."

See, also, Moore v. United States, 150 U. S. 57, 60, 14 Sup. Ct. 26, 37 L. Ed. 996.

As to the relevancy and weight of this testimony, what the Supreme Court said in Holmes v. Goldsmith, 147 U. S. 150, 164, 13 Sup. Ct. 288, 292 (37 L. Ed. 118), is applicable here:

"As has been frequently said, great latitude is allowed in the reception of circumstantial evidence, the aid of which is constantly required, and therefore, where direct evidence of the fact is wanting, the more the jury can see of the surrounding facts and circumstances, the more correct their judgment is likely to be. 'The competency of a collateral fact to be used as the basis of legitimate argument is not to be determined by the conclusiveness of the inferences it may afford in reference to the litigated fact. It is enough if these may tend, even in a slight degree, to elucidate the inquiry, or to assist, though remotely, to a determination probably founded in truth. Stevenson v. Stewart, 11 Pa. 307.' The modern tendency, both of legislation and of the decision of courts, is to give as wide a scope as possible to the investigation of facts. Courts of error are especially unwilling to reverse cases because

unimportant and possibly irrelevant testimony may have crept in, unless there is reason to think that practical injustice has been thereby caused."

[4] 3. It is contended further that the court erred in permitting counsel for the government to cross-examine the defendant, who was a witness on his own behalf, as to certain testimony alleged to·have been given by the latter in a former proceeding, wherein one John Forsgrim was plaintiff and the defendant herein was defendant. On direct examination the defendant had admitted that, prior to the making of the deed from Anna Reinhardt to E. Maud Everitt, he had owned the property described in that deed, known as the St. James Hotel property, at Winlock, Wash., and on cross-examination, after admitting that he had been summoned and had testified in the former proceeding, he was asked the following questions and gave the following answers:

"Q. * * * Doctor, weren't you asked this question and wasn't this your answer, 'Did you ever own real estate there [Winlock]?' and didn't you say, 'No, sir'? A. I do not recollect. If you have got the evidence there it is probably so. Q. And then were you not asked, 'Did you ever have any interest in any real estate there?' and didn't you say, 'No, sir'? A. I do not know."

Counsel for the defendant admit that had the defendant ever testified in any former proceeding that he had owned, or did own, an interest in the real estate in Winlock, and had on the trial of the action now before the court testified to the contrary, then it would have been permissible to impeach him by showing that at a different time and place he had admitted owning an interest in the real estate in Winlock; but they contend that that rule has no application to the present case for the reason that the defendant had testified in this case that he had at one time owned real estate at Winlock, and the impeaching testimony tended to show that during the former proceeding he had testified that he had never owned any real estate, or any interest therein, at that place. The cases admit of no such distinction. The basis of impeaching testimony is inconsistency or contradiction. Evidence impeaches a witness when it assails his general credibility or otherwise weakens the force of his testimony and distracts from the weight to be given it (40 Cyc. 2564); and in connection with this rule there must always be considered the further rule that, in order to impeach a witness by proof of contradictory statements made by him, it is essential that such statements have reference to some matter which is relevant and material to the issue on trial (10 Encyc. Pleading & Practice, p. 294). The questions asked the defendant related to the ownership of the hotel property in Winlock which it was contended had been owned by the defendant and had been exchanged by him for the property set forth and described in the indictment, for the concealment of which he was being tried. The statements brought out on cross-examination were clearly material, and the fact that they were variant from previous statements rendered them admissible for the purpose of impeachment. Nor can it be claimed that there was no reason for the introduction of the former statements and that they were of no weight in determining the question at issue as to the ownership of the property charged to have been concealed from his trus-

tee in bankruptcy. They were inconsistent with and a contradiction of the testimony given by the defendant during the trial of this case upon that very question, and tended to impeach that testimony.

[5] 4. In connection with the impeaching questions asked the defendant by counsel for the government during his cross-examination, and for the purpose of further impeaching his testimony, the government called as a witness one J. A. Cross, the stenographic reporter who had reported the testimony of the defendant during the proceeding referred to. He was shown a paper which he identified as a transcript of the defendant's testimony in that proceeding; and although the witness stated that he could not testify from memory as to what the defendant had said at that time, and had no independent recollection of what the defendant had testified to during that proceeding, and further that a reference to the testimony would not refresh his recollection, still he testified that it was a transcript of the notes taken at that time, that he himself had made the transcript, and that he could swear that it was a correct transcript. From the transcript it appeared that the defendant had testified during the former proceeding that he had never owned any real estate at Winlock nor any interest in any real estate at that place. The specific objection to the admission of this testimony is that the reporter had no independent recollection of what the defendant had testified to, and further that a reference to the transcript did not in any manner refresh his recollection of the defendant's former testimony. But we think that these objections to the introduction of the testimony of the witness were fully overcome by the testimony of the witness that the paper was a transcript of his notes taken during that proceeding, and that he had made the transcript and could swear that it was a correct transcript. The rule is that if the witness, at or about the time the memorandum was made, knew its contents, and knew them to be true, this legalizes and lets in both the testimony of the witness and the memorandum. The two are the equivalent of a present, positive statement of the witness, affirming the truth of the contents of the memorandum. Acklen's Ex'r v. Hickman, 63 Ala. 498, 35 Am. Rep. 54; Wright v. Wright, 58 Kan. 525, 50 Pac. 444; 1 Wigmore on Evidence, par. 735.

The judgment of the court below will be affirmed.