## JOYCE et al. v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. January 7, 1924.)

No. 3981.

1. **Criminal law ⬤➞1159(3)—Verdict on conflicting evidence will not be disturbed.**

An appellate court will not disturb a verdict for lack of evidence to support it, when the evidence was conflicting.

2. **Criminal law ⬤➞1056(1)—Exception necessary to review of refusal of requested instructions.**

In the federal courts, refusal of requested instructions is not reviewable, unless exception is taken before retirement of the jury.

3. **Criminal law ⬤➞829(1)—Refusal of requested instruction not prejudicial error, where correct charge is given.**

Where the jury was fully and correctly instructed on a point, refusal of requested instructions on such point is not prejudicial error.

4. **Criminal law ⬤➞938(1)—Refusal of new trial discretionary.**

Refusal to grant a new trial on the ground of newly discovered evidence is within the discretion of the court.

In Error to the District Court of the United States for the First Division of the Northern District of California; Maurice T. Dooling, Judge.

Criminal prosecution by the United States against Thomas Joyce and others. Judgment of conviction, and defendant Joyce brings error. Affirmed.

Samuel M. Shortridge, Jr., and Marshall B. Woodworth, both of San Francisco, Cal., for plaintiff in error Joyce.

John T. Williams, U. S. Atty., and T. J. Sheridan, Asst. U. S. Atty., both of San Francisco, Cal.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

HUNT, Circuit Judge. Joyce, plaintiff in error, to be called defendant, together with five others, was convicted of a conspiracy to violate the National Prohibition Act. Joyce brought writ of error to this court.

The defendant has argued that the evidence was not sufficient to justify conviction. But there was ample to require submission of the issues to the jury and to sustain the verdict. According to the witnesses for the prosecution, in the premises described as the Hillsdale Hotel, Nos. 47 and 51 Sixth street, was a long bar, divided by a partition running from the "barroom" to the south wall. In the partition was a door worked with a spring, operated by a rope that ran behind the bar. One witness said:

"The bartender had that rope in his hand, * * * and if he knows you he will pull the rope; that is, if he knows you are all right. If he doesn't want you in there, he will refuse to open the door, and you will have to shove open the door. The bar extends on beyond this partition, and behind the partition is a large funnel, with a mouth of over about a foot in diameter, that leads down to a pipe that runs down into the basement."

Witnesses smelled liquor in there on divers occasions. Some days prior to the arrest, Joyce was introduced to a witness as the manager

or boss. Liquor was sold by some of the defendants other than Joyce, but Joyce was often seen in the premises. Joyce told a witness that his "jackass" brandy was made from alcohol from the government bonded warehouse. Joyce was once seen behind the bar, taking money out of the cash register. About April 23, prohibition agents found Joyce and two other defendants behind the bar. Some one refused to open the partition door, whereupon the officers shoved it open and saw what smelled like liquor on the floor, and found a small quantity of liquor in a pitcher that the bartender, Monahan, a defendant, was trying to empty into a funnel. A rent collector testified that about January, 1922, by direction of Joyce, the bartender paid the rent of the premises for a month, although the lease was in another person's name. There was also evidence that on April 12, about 13 days before the "raid," Joyce rented a room for "J. Clark" at a hotel opposite the soft drink place. Joyce was not living at the hotel, but visited the room, and the employees complained that some one plugged the keyhole, and that the maid could not get in with her pass key. Joyce was seen to enter the hotel at night, taking sacks containing bottles to the third floor, where he carried the sacks with their contents toward the room he had engaged. A maid at the hotel testified that once she was in the room when Joyce was there, and that he invited her to have a drink. Joyce was seen to take bottles from the hotel to the place opposite, and to dump the contents into a pitcher, from which something was poured into glasses and sold to patrons.

[1] Defendant earnestly assails the credibility of a material witness for the prosecution, and contends that Joyce conclusively proved that he was not in San Francisco on April 10th, 11th, and 12th, at times when the witness testified he saw Joyce at the premises which were afterward raided. Counsel for the government conceded on the trial that Joyce and Monahan left San Francisco on the evening of the 10th and returned on the evening of the 12th. Whether the witness was honestly mistaken, or deliberately told falsehoods in respect to the dates, was a question for the determination of the jury. That Joyce was present in the premises on the evening of April 23d, when the raid was made, was admitted by Joyce in his own testimony. Conflicts in the evidence were numerous; but, as it was the province of the jury to resolve them, this court will not disturb the verdict. Goldman v. United States, 245 U. S. 474, 38 Sup. Ct. 166, 62 L. Ed. 410.

[2] Reversal is urged because of refusal of the court to give certain requested instructions upon the subject of the reputation of the defendant. The court charged that, evidence of good reputation having been produced, it was the duty of the jury to consider such evidence, and all the other evidence in the case, and that "if, upon a consideration of all the evidence, including that of good reputation," the jury entertained any reasonable doubt of defendant's guilt it was their duty to acquit him; but that if, "after considering all the evidence, including that of good reputation," they had no doubt of his guilt, it was equally their duty to convict him, notwithstanding such good reputation. At the conclusion of the charge defendant saved an exception to an instruction upon another matter, and "also an exception as to the char-

acter." The court replied, "All right." The words quoted constitute the only reservation of an exception to the charge upon the question of character. However, prior to the submission of the case to the jury, defendant submitted requests for instructions to the effect that evidence of an established reputation of good character might alone create a reasonable doubt, although without it the other evidence would be convincing, and that where there was a material conflict in the evidence the jury would be justified in giving the evidence of previous good character of the defendant such weight as would turn the scales of justice in his favor and find him not guilty.

It is now contended that the failure to give such requested instructions was prejudicial error. But the record is that defendant's exception was only to the charge *given,* and not to the requests *refused,* upon the subject of character. The language of counsel who took the exception on the trial contains no intimation of dissatisfaction with the refusal to give the requests upon the subject, and as a result there is no basis for the argument that an exception was saved to the failure to give the requested instructions. The proper practice in federal courts is very simple and definitely established. From the time of the decision in Phelps v. Mayer, 15 How. 161, 14 L. Ed. 643, following the common-law rule, it has been held that it must appear by the transcript that the party who complains of the refusal to instruct as requested excepted to the refusal while the jury were at the bar. St. Clair v. United States, 154 U. S. 134, 14 Sup. Ct. 1002, 38 L. Ed. 936; Feigin v. United States (C. C. A.) 279 Fed. 107; Miller & Lux v. Petrocelli, 236 Fed. 846, 150 C. C. A. 108. In Star Company v. Madden, 188 Fed. 910, the court quoted from Phelps v. Mayer, supra, as setting forth the rule of practice for federal courts, holding that assignments which deal with defendant's requests to instruct the jury in certain particulars cannot be considered, unless the record discloses the fact that exceptions to the court's refusal to charge such requests were properly preserved. Copper River & N. W. Ry. v. Heney, 211 Fed. 459, 128 C. C. A. 131. The practice is not merely technical; it rests upon the sure foundation that, if one is dissatisfied because of the failure of the court to cover legal propositions which he asked to be given, the question raised should be so brought to the attention of the trial court before the retirement of the jury as to enable the judge to correct the omission or error, if there be any; and the practice is also just, in order that the appellate court may pass upon the point involved. Counsel who represented defendant on the trial recorded no dissatisfaction, and defendant cannot now contend that it was error in the trial court not to elaborate as requested.

[3] But, if we were to consider the exception as including the refusal to give the three requests, we should feel constrained to hold that there was no prejudicial error. The instruction given was in harmony with the law as laid down in Le More v. United States, 253 Fed. 887, 165 C. C. A. 367; Warren v. United States, 250 Fed. 89, 162 C. C. A. 261, and Kalmanson v. United States (C. C. A.) 287 Fed. 71, all of which comment upon the formula requested which was taken from the discussion in Edgington v. United States, 164 U. S. 361, 17 Sup. Ct. 72, 41 L. Ed. 467.

[4] In refusing to grant a new trial on the ground of newly discovered evidence, the court was clearly acting within its discretion, and committed no error. Andrews v. United States, 224 Fed. 418, 139 C. C. A. 646.

Several assignments of error question the rulings upon the admission or rejection of testimony. We have examined them and find no prejudicial error.

The judgment is affirmed.