### McDONOUGH et al. v. UNITED STATES.*

(Circuit Court of Appeals, Ninth Circuit. May 26, 1924. Rehearing Denied June 30, 1924.)

No. 4109.

1. **Criminal law ⬦1134(4)—Error does not lie for granting or refusing new trial.**

Error does not lie for granting or refusing new trial.

2. **Criminal law ⬦944—Denial of new trial for newly discovered evidence held not abuse of discretion.**

Denial of motion for new trial on ground of newly discovered evidence, consisting of testimony of convict, *held* not an abuse of discretion.

3. **Intoxicating liquors ⬦249—Premises held not exempt from search as private dwelling occupied as such.**

Search warrant *held* properly issued to search house, under National Prohibition Act, tit. 2, § 25 (Comp. St. Ann. Supp. 1923, § 10138½m), as against contention house was private dwelling occupied as such, in view of evidence of unlawful sale of liquor.

4. **Intoxicating liquors ⬦236(9), 238(1)—Evidence held to support conviction of maintenance of nuisance, and properly submitted to jury.**

Evidence *held* sufficient to support a verdict for maintaining a nuisance, and question was properly submitted to jury.

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Motion for leave to file supplemental petition for rehearing denied 1 Fed. (2d) ——.

5. **Intoxicating liquors ☜236(11)—Evidence held sufficient to sustain conviction for unlawful sale of liquors.**

Evidence *held* sufficient to sustain a conviction for unlawful sale of liquors.

6. **Criminal law ☜1159(2)—Judgment based on verdict supported by evidence not disturbed.**

Reviewing court cannot disturb a judgment based on verdict supported by evidence and legitimate inferences authorized to be drawn therefrom.

7. **Criminal law ☜1060—Exception to argument of counsel, without more, does not raise question of law.**

An exception to argument of counsel, without more, does not raise a question of law for judgment of trial or appellate court, since exception must be made to some ruling of court.

8. **Indictment and information ☜175—Material variance held not to exist between allegations of place of sale of whisky and proof.**

Material variance *held* not to exist between allegations of place of sale of whisky and proof presented, though it appeared that delivery of whisky and payment for it were made elsewhere than at place of alleged sale.

9. **Indictment and information ☜175—Proof that element of offense committed in place other than charged not material.**

Where offense is charged to have been committed in one place, but there is evidence tending to prove element of offense committed in another place, but within jurisdiction of court, variance is immaterial.

10. **Criminal law ☜721(3)—Incidental reference made to defendants being in court held not prejudicial.**

Incidental reference made to defendants being in court *held* not prejudicial error, though defendants were asking for postponement on account of absence of witnesses, especially where defendants took stand and testified.

11. **Intoxicating liquors ☜233(2)—Evidence of sales relevant to charge of maintaining nuisance.**

Testimony of sales of whisky made to various persons was relevant to charge of maintaining common nuisance, under National Prohibition Act, tit. 2, § 21 (Comp. St. Ann. Supp. 1923, § 10138½jj).

12. **Intoxicating liquors ☜242—Sentence for maintaining nuisance not excessive.**

Fine of $1,000 and imprisonment for nine months for maintaining a liquor nuisance, under National Prohibition Act, tit. 2, § 21 (Comp. St. Ann. Supp. 1923, § 10138½jj), was not excessive.

In Error to the District Court of the United States for the First Division of the Northern District of California; John S. Partridge, Judge.

Peter P. McDonough and another were convicted of maintaining a common nuisance and selling intoxicating liquor, and bring error. Affirmed.

Information charging Peter P. McDonough and Harry Rice jointly in two counts with two offenses for violation of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.), both committed on the 23d day of March, 1923: (1) Maintaining a common nuisance at the northeast corner of Clay and Kearny streets in the city and county of San Francisco, in keeping for sale on the premises five gallons of whisky, containing one-half of 1 per cent., or more, of alcohol by volume, fit for use for beverage purposes; (2) and at that time and place selling five gallons of whisky containing one-half of 1 per cent., or more, of alcohol, fit for beverage purposes.

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Frank J. Hennessy and Marshall B. Woodworth, both of San Francisco, Cal. (Charles J. Heggerty, of San Francisco, Cal., of counsel), for plaintiffs in error.

John T. Williams, U. S. Atty., and T. J. Sheridan, Asst. U. S. Atty., both of San Francisco, Cal.

Before GILBERT, HUNT, and MORROW, Circuit Judges.

MORROW, Circuit Judge. The plaintiffs in error were tried, convicted, and sentenced upon two counts of a criminal information filed by the United States attorney. We will hereafter refer to them as the defendants.

The first count charged that the defendants on March 23, 1923, maintained a common nuisance at the northeast corner of Clay and Kearny streets, San Francisco, in keeping for sale on the premises certain intoxicating liquor, to wit, five gallons of whisky containing one-half of 1 per cent. or more of alcohol, fit for use for beverage purposes, in violation of section 21 of title 2 of the Act of October 28, 1919, known as the National Prohibition Act (41 Stats. at Large, 307, 314 [Comp. St. Ann. Supp. 1923, § 10138½jj]).

The second count charged that the same defendants, on March 23, 1923, at the same place, sold certain intoxicating liquor, to wit, five gallons of whisky containing one-half of 1 per cent. or more of alcohol, fit for use for beverage purposes, in violation of section 3 of title 2 of the Act of October 28, 1919, known as the National Prohibition Act (41 Stats. at Large, 307, 308 [Comp. St. Ann. Supp. 1923, § 10138½aa]).

The following testimony on behalf of the prosecution relates to some of the questions involved in this writ of error:

M. J. O'Callaghan, Jr., testified that he was a federal prohibition agent, and was such on March 23, 1923; knew the defendants, Peter P. McDonough and Harry Rice, the first by sight for about five years, and the latter since about March 16, 1923; was familiar with the premises known as McDonough's, at the northeast corner of Clay and Kearny streets, San Francisco, the premises consisting of a bar and a back room and some kind of a lodging house at the top. It was what would be called an old-time saloon. On March 23, 1923, the witness, with one Frank Serresseque and one Miles Perrucci, entered the premises, and saw Harry Rice and the bartender. Rice was standing toward the end of the bar on the outside. Witness overheard a conversation between Rice and Serresseque. Serresseque said to Rice: "Here is a bootlegger from San Jose, and he wants to get some whisky." Rice, in response, said: "Is he all right?" Serresseque said: "Yes."

Perrucci and witness were then introduced to Rice. Defendant Rice asked how much whisky he wanted. He said: "Five gallons." The price was set on the purchase. The price was $35 a gallon. Rice then took a bottle of whisky from his back pocket and handed it to the bartender, and they had a drink on the house. The bartender poured out a drink in glasses that were placed upon the bar. They were not charged for that drink. After that drink Perrucci bought a drink at 50 cents a drink and paid the money to the bartender, who put it in

the cash register. The drinks Perrucci purchased came fom the same bottle that was handed over the bar by Rice. Witness bought a drink after that, which came from the same source; paid 50 cents a drink. The bartender took the money and put it in the cash register. Then witness saw the defendant Peter P. McDonough coming out of the back room. Witness saw a safe in the back room, and noticed the name "McDonough" painted across the face. McDonough came out of the office. Rice stepped over to him, and told him there was a new whisky customer. McDonough said, in response to that, "Is he all right?" Rice said to McDonough, in answer to that, "He must be; the Frenchman brought him," referring to Serresseque.

Perrucci then took $180 from his vest pocket and handed it to McDonough. McDonough threw a $20 bill on the counter, got change from the bartender, and handed back to Perrucci $5. After payment to McDonough by Perrucci, Perrucci said, if the whisky was good, they would come back and be a good customer. McDonough said the whisky was good and could be sold to anybody, and was from 108 to 110 proof and could be cut. Perrucci said, in reply, that if it was good he would be a good customer. McDonough said that he had three or four boats coming in originally, but now only one was coming in, but next month he expected more in, and the next time he came it would be a dollar cheaper per gallon. Rice then asked witness and Perrucci: "What means of transportation have you?" Perrucci said: "Our car is broken down." Then Rice said: "We will go in Frank's car," meaning Serresseque.

Thereupon Serresseque and defendant Rice left in Serresseque's car to get the whisky. Witness and Perrucci took a walk up Kearny toward Broadway. When they returned to the saloon, they saw the defendant Rice. He told witness and Perrucci that, as they were not there when Rice and Serresseque arrived back, Serresseque took the whisky out to 2001 Folsom street. Witness and Rice went there and found the five gallons of whisky. Serresseque had it, and gave it to Perrucci in the presence of witness. Witness thereupon identified the demijohn. It was thereafter introduced in evidence.

On cross-examination the witness said, among other things:

"When McDonough came out of the back room, he had some bills, some greenbacks, in his hands."

Frank Serresseque testified that he knew the witnesses O'Callaghan and Perrucci; that he went there with them on March 23d. The parties entered the saloon, and saw defendant Rice, and had a conversation with him. Witness told Rice he wanted to get 5 gallons of whisky for a friend of his, Perrucci. Rice asked witness if he knew the man. Witness told him, "Yes; the man was introduced to him by a friend, by O'Callaghan." Rice asked if he was all right. Witness told him, "Yes; the man is all right." After that Perrucci paid for the whisky in advance. Witness made Perrucci and O'Callaghan acquainted with Rice by their right names. They had a talk with Rice about the whisky. After the talk, or while it was going on, or shortly following it, witness saw defendant McDonough. He came from back in the office at the

299 F.—3

rear corner of the saloon. He became acquainted with Perrucci and O'Callaghan. Witness saw them talking together. Rice introduced them to him. Witness saw money transaction between Perrucci and McDonough. Saw Perrucci take his money and hand it to McDonough. He took it out of his vest pocket. Something was said after that regarding how he would get the whisky. Rice told witness they were to get the whisky, he and witness. He went with witness' machine to 162 Eleventh avenue; stopped the machine in front of the house. Rice went into the house without a demijohn and returned with the five-gallon demijohn, put it in the machine. The witness identified the demijohn. Witness first saw that demijohn in Harry Rice's hand at 162 Eleventh avenue; after witness got this demijohn from Rice, they went back to McDonough's saloon. When they got there they did not see Perrucci or O'Callaghan.

Witness told Rice to tell Perrucci and O'Callaghan to come and meet him at Enterprise alley, between Sixteenth and Seventeenth streets, off Folsom. Witness drove to that point; left the whisky in the machine. Later saw Perrucci. He told witness he wanted to get the whisky. He took him out and handed him the whisky. He put it in his machine and went away with it. O'Callaghan was with him. While witness was in McDonough's saloon, talking to Rice about buying this whisky, witness saw somebody getting drinks, and Rice served them. Witness saw Perrucci buying drinks. He could not remember if O'Callaghan did. He knew what price Perrucci would have to pay for the whisky. It was $175—$35 a gallon. He bought some of it before from Mr. Rice, and paid $35. The first time was about 4½ months before; the second time was about 2½ or 3 months before. Witness bought five gallons each time, and the whisky came from the same place, 162 Eleventh avenue. Witness made the arrangements for these other purchases at Harry Rice's place at McDonough's saloon, northeast corner of Clay and Kearny streets.

Witness saw McDonough after Perrucci had made this purchase— about 8 or 10 days after. A fellow came over to witness' place and told him that McDonough wanted to see him. Witness went to see him, and saw him down at the office, one or two doors below the saloon. When witness went there, he asked what McDonough wanted. Witness said: "What do you want to see me for?" McDonough asked about the fellow—who was this fellow that he introduced to Harry Rice in the saloon, Perrucci and O'Callaghan? Witness told him those fellows were all right. Mr. Perrucci lives in San Jose. His father had a saloon and he has a vineyard, and two or three ranches, and he bought the whisky because he wanted to start in the bootlegging business himself. He never told the witness if he was a federal prohibition agent. Witness did not know it. McDonough did not ask him. He said they were kind of suspicious, and that was why the saloon was closed. McDonough did not tell witness anything about the purchase of whisky that Perrucci made on the 23d. He just said he was suspicious of Perrucci, and that was why he closed his saloon.

Following the verdict of the jury, finding both defendants guilty, counsel moved for a new trial on behalf of each defendant, on various grounds, among others that the evidence was insufficient to sustain the

verdict. The motions were considered by the court and denied. Thereupon the court sentenced McDonough, on the first count of the information, to pay a fine of $1,000 and be imprisoned for a period of nine months, and on the second count that he be imprisoned for a period of six months, said terms of imprisonment to run consecutively; that Rice, on the first count of the information, pay a fine of $1,000, and be imprisoned for a period of six months, and on the second count that he be imprisoned for a period of six months, said terms of imprisonment to run consecutively. Thereafter the defendants made a supplemental motion for a new trial, and the overruling of this motion is assigned as error.

In Kerr v. Clampitt, 95 U. S. 188, 189 (24 L. Ed. 493) the Supreme Court said:

"We have no jurisdiction to revise the action of an inferior court upon the question of granting or refusing a new trial, however meritorious the grounds presented for its consideration or erroneous its decision. The final judgment cannot be examined through the rulings of the lower court upon that question. If, therefore, when the final judgment is brought before us for review by writ of error, no other documents are presented for our consideration than such as were before the inferior court upon the application for a new trial, we cannot look into them; and, if error is not otherwise disclosed by the record, the judgment must be affirmed."

In Ayers v. Watson, 137 U. S. 584, 597, 11 Sup. Ct. 201, 206 (34 L. Ed. 803), Mr. Justice Bradley, speaking for the court with respect to an error assigned in that case, that the trial court had refused to grant a new trial, said, with some impatience:

" * * * We have only to repeat what we have so often endeavored to impress upon counsel, that error does not lie for granting or refusing a new trial."

In Andrews v. United States, 224 Fed. 418, 419, 139 C. C. A. 646, 647, this court said:

"The ruling of the court below in denying the motion of the plaintiffs in error for a new trial is not assignable as error. Pickett v. United States, 216 U. S. 456, 30 Sup. Ct. 265, 54 L. Ed. 566. The fact that affidavits of newly discovered evidence were filed in support of the motion creates no exception to the thoroughly established rule. Holmgren v. United States, 156 Fed. 439, 84 C. C. A. 301, affirmed in Holmgren v. United States, 217 U. S. 509, 30 Sup. Ct. 588, 54 L. Ed. 861, 19 Ann. Cas. 778; Mitchell v. United States, 196 Fed. 874, 116 C. C. A. 436."

See, also, Kettenbach v. United States, 202 Fed. 377, 390, 120 C. C. A. 505; Lueders v. United States, 210 Fed. 419, 421, 127 C. C. A. 151; Joyce v. United States (C. C. A.) 294 Fed. 665, 668.

[1] To avoid this long and well established limitation upon the authority of an appellate court under the federal judicial system to review the action of the trial court in granting or refusing to grant a new trial, the defendants have assigned as error the "gross abuse of discretion" of the trial court in denying defendant's supplemental motion for a new trial, made on the ground of newly discovered evidence. An affidavit attached to the information filed by the United States attorney was made by one Miles Perrucci in substantially the language of the information. Perrucci was, at the time, a prohibition agent

under cover. In this affidavit, and in the information filed by the United States attorney, Peter P. McDonough and Harry Rice were both charged with the offenses set forth in the information.

Upon the trial of the case Perrucci, who had made the supporting affidavit, was not called as a witness by the prosecution, but subsequently the defendants produced him from the state prison by writ of habeas corpus ad testificandum, in support of the supplemental motion for a new trial. This motion by the defendants was directed particularly to alleged newly discovered evidence on behalf of defendant Mc-Donough. Perrucci was the newly discovered witness, found in the state prison, serving a sentence pursuant to a judgment of a state court, entered after Perrucci had made the affidavit supporting the information in this case, and his testimony was the newly discovered testimony.

On the hearing of this motion, Perrucci denied that he had ever seen the defendant Peter P. McDonough before. This was in direct contradiction of the testimony of O'Callaghan and Serresseque. Perrucci admitted he had seen the defendant Harry Rice on the 23d day of March, 1923, at the northeast corner of Clay and Kearny streets, and had purchased from him the five gallons of whisky as charged in the information; but he did not see McDonough on that occasion, or at any time prior to the hearing of the supplemental motion for a new trial, and that the purchase of the five gallons of whisky alleged in the information and supporting affidavit was a transaction with Rice alone, and not with McDonough.

The court heard all the evidence offered by the defendants upon this question, and in the opinion delivered at the close of the hearing reviewed at some length and in critical detail the testimony of Perrucci and the other evidence in the case touching the identity of McDonough in the transaction. In this opinion the court referred to the fact that Perrucci was a convict, whose testimony was to be received with caution, and pointed out numerous inconsistencies and contradictions in such testimony, and concluded that the verdict of the jury was fully justified, and that the supplemental motion for a new trial should therefore be denied.

[2] There is no possible view of these proceedings wherein the action of the trial court in denying the original and supplemental motions for a new trial can be held as an "abuse of discretion." On the contrary, the court, in hearing the supplemental motion for new trial, ignored all technical objections, and in the interest of substantial justice gave the motion a full and careful judicial consideration. The defendants are not satisfied with this judicial conclusion reached by the trial court, and contend that it was a "gross abuse of discretion" not to vacate the judgment, at least against McDonough, and grant him a new trial. In other words, this court is asked to review the evidence, and determine whether the trial court was right in holding that the evidence was not sufficient to justify a new trial.

In Mattox v. United States, 146 U. S. 140, 147, 13 Sup. Ct. 50, 36 L. Ed. 917, the trial court had refused to receive and consider certain affidavits offered by the defendant in support of his motion for a new trial. The Supreme Court held that the trial court, in refusing to re-

ceive and consider such affidavits, did not exercise its discretion with respect thereto, and that this was error. That is not this case.

In Holmgren v. United States, 217 U. S. 509, 521, 30 Sup. Ct. 588, 54 L. Ed. 861, 19 Ann. Cas. 778, the Supreme Court made clear the distinction between the trial court exercising and refusing to exercise its discretion with respect to evidence offered in support of a motion for a new trial. This it did in commenting on the case of Ogden v. United States in the Circuit Court of Appeals for the Third Circuit, 112 Fed. 523, 525, 50 C. C. A. 380, where it had been held by the Circuit Court of Appeals that the refusal of a federal court to permit the filing of a motion for a new trial offered in due time, or to consider the same or the evidence offered in the support of such motion, was a refusal to exercise its discretion, and could be reviewed by the Circuit Court of Appeals on writ of error. In the Holmgren Case the Supreme Court pointed out that the trial court, in that case, had not refused to consider the motion for new trial, and that there was, therefore, no error that could be made the basis of review by writ of error to the appellate court.

In the present case, the trial judge not only considered the motion for a new trial, in all its bearings, but as we believe reached a correct conclusion as to the facts. During the progress of the trial, the prosecution offered in evidence certain vessels, cases, and other containers of liquors found and seized on April 25, 1923, by the prohibition officer on the premises of the defendant Harry Rice, at 162 Eleventh avenue, San Francisco, under a search warrant issued by the United States commissioner. This was more than a month after the purchase of the five gallons of whisky at McDonough & Rice's saloon by Perrucci, referred to in the testimony heretofore recited.

The affidavit of probable cause upon which the search warrant was issued was made by M. J. O'Callaghan, Jr., who alleged that "on March 23, 1923, he purchased five gallons of whisky from Peter P. McDonough and Harry Rice at the northeast corner of Clay and Kearny streets, San Francisco, and that said whisky was obtained from said No. 162 Eleventh avenue," thus connecting the probable cause with the purchase of the five gallons of whisky on March 23d from McDonough & Rice at the northeast corner of Clay and Kearny streets, the offense charged in the information. The court admitted in evidence the seized liquors, except three five-gallon jugs of sherry wine withheld by the prohibition officials.

It is contended, on behalf of the defendants, that 162 Eleventh avenue is the private residence of the defendant Harry Rice, and under the constitutional guaranty of the Fourth and Fifth Amendments it was exempt from search, and the liquors found therein from seizure, and that the liquors so seized were inadmissible in evidence. C. H. Wheeler, the prohibition agent who made the search of the premises and the seizure of the liquors, on April 25, 1923, identified the various packages seized and the premises from which they were taken, and said:

"I would not say that no part of the building was used for business purposes, such as a store, restaurant, hotel, or anything of that sort. I think it was. This part where we found the liquor was used as a liquor store.

That would be a conclusion. I think you are asking for a conclusion. I never saw any liquor sold on these premises. No; I went through the entire premises. I think there are five rooms. Possibly there may be six. I didn't pay very much attention to any room that we did not find contraband evidence in. Yes; these rooms were all furnished—all except the one that had the liquor in it. There was nothing in that room except the liquor and a stepladder."

[3] Section 25 of title 2 of the National Prohibition Act (41 Stat. p. 315 [Comp. St. Ann. Supp. 1923, § 10138½m]) provides no search warrant shall issue to search any private dwelling occupied as such, unless it is being used for the unlawful sale of intoxicating liquors. The evidence of the sale of the five gallons of whisky on March 23, 1923, obtained by the defendant Rice himself from the unfurnished room at 162 Eleventh avenue, San Francisco, established the probable cause upon which the warrant of search and seizure was issued. The five-gallon demijohn of whisky purchased at McDonough & Rice's saloon, on the northeast corner of Clay and Kearny streets, came from these premises, but not by seizure. The evidence was sufficient to establish the fact that the premises in question were being used for the unlawful sale of other intoxicating liquors. The premises were not, therefore, exempt from search, and the liquors were not exempt from seizure. We are of the opinion that there was no prejudicial error in admitting the testimony.

[4-6] It is next objected that there was no evidence to support the verdict against McDonough for maintaining a nuisance at the nor.h-east corner of Clay and Kearny streets. This was a question of fact for the jury. The evidence to which we have already referred connects McDonough with such premises and the sale of the five-gallon demijohn to Perrucci. There was also evidence of other sales in this saloon by drinks, and prior thereto other sales in five-gallon demijohns. We cannot disturb a judgment, based upon the verdict of a jury, supported by such evidence and the legitimate inferences authorized to be drawn therefrom.

[7] It is next objected that the prosecuting attorney, in both his opening and closing arguments to the jury, was guilty of misconduct in his remarks concerning the defendant McDonough, as follows:

"Mr. Green: And if you acquit this man, there will be a tinkling of glasses and a grand celebration to-night at the Neptune Palace; they will crown McDonough again as 'King of the Tenderloin,' a title which he has lost for the moment. Are you gentlemen going to make that recoronation possible?"

The attorney for the defendants interposed an exception to the language of the prosecuting attorney as not based on any evidence at all, but the court was not asked to make any ruling upon the exception, or to instruct the jury with respect thereto. Whatever objectionable departure from the evidence in the case the prosecuting attorney may have indulged in, in his argument to the jury, no ruling was made by the court, and no error noticed or preserved for review. The rule requires that objections to the proceedings in court which counsel for defendant wish to preserve must be presented to the trial court with the proper objection, and, if determined adversely, an exception must then be taken to the ruling, to secure a review by the trial or appellate

court. An exception to the argument of counsel, without more, does not raise a question of law for the judgment of the trial or appellate court. In Encyc. of Plead. & Prac. 755, it is said:

"In order that a party may avail himself in an appellate court of an objection for misconduct of opposing counsel in the argument of the case, he must not only interpose a seasonable objection, * * * but he must then press the court to a distinct ruling, and, if dissatisfied therewith, enter an exception, otherwise there is nothing presented for review."

In Crumpton v. United States, 138 U. S. 361, 364, 11 Sup. Ct. 355, 356 (34 L. Ed. 958), the court said:

"It is the duty of the defendant's counsel at once to call the attention of the court to the objectionable remarks, and request its interposition, and, in case of refusal, to note an exception."

The rule here stated was followed by this court in Alaska-Treadwell Gold Mining Co. v. Cheney, 162 Fed. 593, 598, 89 C. C. A. 351. In Diggs v. United States and Caminetti v. United States, 220 Fed. 545, 555, 136 C. C. A. 147, 157, the United States attorney, in addressing the jury, said:

"The government of these United States, gentlemen of the jury, whom we have the honor to represent here, your government, as well as my government, the government of all of us, demands that the laws enacted for the protection and preservation of its young and decent women be adequately and rigidly enforced. An acquittal in this case would be a miscarriage of justice, and it would be a blot upon the fair name and escutcheon of California."

This court, in commenting upon these remarks, said:

"It is the general rule that improper remarks in argument by the prosecuting attorney, although prejudicial, do not justify reversal, unless the court has been requested to instruct the jury to disregard them, and has refused to do so."

The court referred to the case of People v. Shears, 133 Cal. 154, 65 Pac. 295, as an authority holding that, where the defendant did not invoke the action of the court to instruct the jury that it was improper, and to disregard it, but merely excepted to the remarks of the district attorney, the impropriety is not ground for reversal of the judgment, upon conviction.

[8] Defendants contend that there is a material variance between the allegations of the place of sale of the whisky, as set out in the second count of the information, and the proof presented as to the place of sale. The place of sale set out in the information was at the northeast corner of Clay and Kearny streets, San Francisco, in the Southern division of the Northern district of California, and within the jurisdiction of the court. There was evidence tending to show that the delivery of the whisky and the payment for it were made elsewhere than at the place of alleged sale; but it is conceded that the payment and delivery, wherever made, were in the city of San Francisco, in the Southern division of the Northern district of California, and within the jurisdiction of the court.

The substance of the defendant's contention is that between the time of making preliminary arrangements for the sale of the whisky, and the time of payment and the time of delivery, there was the locus

pœnitentiæ—that is to say, either party might recede from or abandon the transaction, and because of that right in the parties the sale was not completed until such payment and delivery were made, and that the place of sale, payment, and delivery are therefore material, and must correspond with the place of sale as alleged in the information, and, if not so proven, there is a material variance, and the jury should have been instructed to acquit. The defendants also object to the refusal of the court to give the jury certain instructions relating to the place of sale, payment, and delivery. The objection makes a distinction insisted upon by the defendants that there was evidence tending to show that the whisky was not delivered to the purchaser, or paid for by him, at the place charged in the information as the place of sale, and that these elements of sale and delivery are material, and should have been so explained to the jury, and if a variance was found, it was material, and the defendants should have been instructed to acquit.

[9] The offense charged in the statute is general, personal, and transitory, and not local. If committed anywhere in the United States, it is within the law. If committed within the territorial jurisdiction of the court, the jurisdiction of the court is complete over the offense, and the particular subdivision of the territory is immaterial; but more specifically in this case the fact that the offense is charged to have been committed in one place, while there is evidence tending to prove that an element of the offense was committed in another place, but within the jurisdiction of the court, the variance is immaterial. If the offense is charged to have been committed in one jurisdiction, and proof is introduced that the offense, or some material element of it, was committed in another jurisdiction, another question would be presented, which does not arise in this case. It is also contended that the place of payment, as proven, like the place of delivery, must correspond to the place of alleged sale, and, if not, there is a material variance, and the jury should have been instructed to acquit.

The whole of the city of San Francisco is within the jurisdiction of the court that tried this case, and there was evidence tending to prove that the elements of the offense—sale, delivery, and payment—were made in said city. There was evidence tending to show that Perrucci made the purchase of the defendant McDonough, Rice being present and participating in the transaction, and that the money was paid by Perrucci for the whisky at that time in the saloon at the northeast corner of Clay and Kearny streets; that the whisky was subsequently obtained by Rice and Serresseque from Rice's residence, 162 Eleventh avenue. Serresseque testified that:

"We then went back to McDonough's saloon. When we got there, we did not see Perrucci and O'Callaghan. I told Rice to tell them I was going home (Enterprise alley, between Sixteenth and Seventeenth streets, off Folsom), and for them to meet me there. Perrucci came into the house. I took him outside to my machine and handed him the whisky."

Perrucci, in his affidavit supporting the information, said the sale was made in the saloon at the northeast corner of Clay and Kearny streets by McDonough & Rice. He subsequently testified, in support of the supplemental motion for a new trial, that he made the purchase

from Rice at that place and paid for it there, but defendant McDonough was not there. The defendant Rice testified that Serresseque and he went out in Serresseque's car to Rice's house at 162 Eleventh avenue and got the whisky, and that Serresseque paid him for it coming back. Perrucci, on this point, contradicts the defendant Rice's testimony positively. He testified:

"If Harry Rice testified here under oath that he never had any dealings with me at all, that I was down there, but nothing was said by me to him regarding the purchase of the whisky, and that the whole thing was between himself and Serresseque, and that he was paid the money out on the street in the automobile, that is false. That is wrong. Harry Rice did not tell the truth when he related that story. I am telling the truth exactly regarding how it happened."

The court, in instructing the jury upon this question, said:

"The second charge or count is that the defendants sold five gallons of whisky; it is not denied that the defendant Rice did sell this five gallons of whisky, but it is denied that the defendant McDonough had anything to do with this sale. That matter you are to determine from all the evidence in the case. As pointed out previously, there is evidence that the defendant McDonough received that money for this five gallons of whisky. If you find that that is true, then you must find the defendant McDonough guilty upon this second count, because I charge you that the receipt of the money would constitute the defendant McDonough a principal in this sale, even though the actual delivery of the whisky was made by the defendant Rice alone, and, furthermore, that it makes no difference where the whisky was delivered, nor where the money was paid.

"It is equally immaterial that the whisky was not delivered in the premises aforesaid. It is entirely sufficient to justify a conviction if you find from the evidence that the arrangements were made by the. defendant McDonough and the whisky afterwards delivered by the defendant Rice. It is likewise not denied that a quantity of whisky and other intoxicating liquors were found in the home of the defendant Rice. You are entitled to take that fact into consideration also in connection with all the other facts in the case, in determining the guilt or innocence of these defendants."

In Commonwealth v. Creed, 74 Mass. (8 Gray) 387, an indictment charged a felonious assault in Boston. Evidence that the offense was committed in Chelsea, and not in Boston, was admitted by the trial court. The Supreme Judicial Court of Massachusetts held that it was not a variance, nor incompetent evidence, if the government proved the offense to have been committed in Chelsea, within said county of Suffolk; the allegation of place being sufficient, if the place proved, though different from that set forth, was within the county and jurisdiction of the court. In Carlisle v. State, 32 Ind. 55, the Supreme Court of Indiana reviewed the authorities upon this question, and held that the variance between the allegations in the indictment as to the place where the offense was committed and the proof as disclosed on the trial was not material; both places being within the jurisdiction of the court.

If, then, the offense charged to have been committed in one place and the proof that it was committed in another is an immaterial variance, providing the offense, as charged and proven, was committed within the jurisdiction of the court, then it follows that there is no material variance in a charge of the illicit sale of whisky, where the difference of place of sale as charged in the information and the proof of

sale is merely in the payment or delivery, or both. Under the statute in this case, aside from the jurisdiction of the court, the place of payment for or delivery of the whisky in this illicit traffic is obviously immaterial. Counsel for the defendants cite a number of cases where a material variance was recognized between the allegations of the complaint and the proof, but the rule in such cases is inapplicable in this case.

[10] No prejudicial error was committed by the court with respect to an incidental reference made to the defendants being in court. It appears that counsel for the defendants was asking for a postponement of the case on account of the absence of witnesses, whereupon one of the counsel for the prosecution interposed the remark:

"May it please the court, the two defendants are here—"

The statement was interrupted before completion by counsel for defendants, who stated:

"We desire to put our witnesses on in our own order."

The remark of the counsel for the prosecution "that you have the two defendants in court" was excepted to as error. The court remarked that he did not "think that is very serious," to which counsel for defendants replied that he knew that, but under the law defendants do not have to take the witness stand unless they desire to. The court answered:

"The jury will be instructed to disregard that remark."

The case of McKnight v. United States, 115 Fed. 972, 976, 54 C. C. A. 358, is cited by the defendants as presenting a somewhat similar situation. The situation was, in fact, very different. In the trial court in that case a demand was made by counsel for the government, acting by direction of the trial judge, upon the defendant to produce an incriminating document. This was plainly error, but there was no order of the court directing the jury to disregard the error. Had there been such an order as there was in this case, the inference is that the Circuit Court of Appeals would have held that the error was cured. In Fitter v. United States, 258 Fed. 567, 576, 169 C. C. A. 507, 516, a distinction is drawn by the Circuit Court of Appeals of the Second Circuit between the McKnight Case and the Fitter Case. The distinction is applicable in this case. The court said:

"The circumstances are such as to plainly distinguish the case [the case before the court] from McKnight v. United States, 115 Fed. 972, 977, 54 C. C. A. 358, where the demand for the production of an incriminating document was made by counsel for the government acting by direction of the trial judge, and where there was no direction to the jury to disregard the error."

The Circuit Court of Appeals in the McKnight Case refers to the Act of Congress of March 16, 1878 (20 Stat. 30 [Comp. St. § 1465]), providing that persons charged with an offense under the laws of United States "shall, at his own request, but not otherwise, be a competent witness," and the question was suggested whether an instruction by the court that no inference can be drawn against the accused, because of his failure to testify on his own behalf, dispels the effect of

an allusion to that fact. The case of Wilson v. United States, 149 U. S. 60, 66, 13 Sup. Ct. 765, 766 (37 L. Ed. 650), is cited. In that case Mr. Justice Field referred to an appeal to a jury by the district attorney, who said:

"I want to say to you that, if I am ever charged with crime, I will not stop by putting witnesses on the stand to testify to my good character, but I will go upon the stand and hold up my hand before high Heaven and testify to my innocence of the crime."

Counsel for the plaintiff called attention to this language of the district attorney, but the court only said:

"I suppose the counsel should not comment upon the defendant not taking the stand,"

—a very insufficient correction, if, indeed, it did not accentuate the injury. Judge Field states what should have been done.

"It [the court] should have said that the counsel is forbidden by the statute to make any comment which would create or tend to create a presumption against the defendant from his failure to testify."

In other words, the correction was not sufficient, but could have been made so by the proper direction of the court. We do not have in this or in any other case of authority with which we are familiar a construction of the statute requiring us to hold the incidental proceedings in this case with the prompt correction of the court requiring a new trial. The remark made by the district attorney was of but little importance, and was not hostile to the defendants. It referred merely to the general procedure in the particular situation, and not the conduct of the defendants, and as both defendants subsequently took the stand and testified in the case on their own behalf, freely and voluntarily, the proceedings cannot be deemed prejudicial error.

The first count of the information, charging the defendants with unlawfully maintaining a common nuisance, requires further notice. The evidence tended to prove that this was a continuing offense, carried on by a number of sales of whisky in small and large quantities. In support of the charge the prosecution introduced evidence tending to prove the sales of a number of drinks to Perrucci and O'Callaghan in the saloon on the date mentioned, and a single sale to O'Callaghan in the same place a little later, after Rice had been to his home and got the five gallons of whisky sold to Perrucci. There was also evidence tending to show sales of drinks to others served by Rice while the parties were negotiating for the Perrucci purchase; also testimony tending to prove the sale of whisky by Rice on the 16th of March, one week prior, and on two other occasions—once 4½ months before and again about 2½ or 3 months before. There was evidence tending to prove that McDonough became suspicious of the sale of the whisky to Perrucci, and closed the saloon a few days after the sale.

[11] All this testimony was relevant to the charge of maintaining a common nuisance, and admissible upon that issue, separate and distinct from the evidence introduced to prove the sale of the five gallons of whisky on March 23, 1923, not obtained by seizure, which was admitted by the defendant Rice, and it was all separate and distinct from

the subsequent search and seizure of liquors at 162 Eleventh avenue on April 25, 1923. The evidence of both offenses was sufficient to sustain the verdict of the jury, without the evidence of the liquors obtained by the search and seizure.

[12] The sentence was not excessive. The evidence related to a number of events or transactions of a flagrant character, reduced by the prosecution to two separate and independent charges, "selling whisky and maintaining a common nuisance." There was a common element running through all the transgressions, in violation of the Prohibition Act; but this common element of culpability, instead of reducing the offenses, fixed them definitely at not less than two within the scope of the statute. The jury found the defendants guilty of both.

The defendants took a general exception to the charge of the court to the jury, but no specific exception to any part of it. We have, however, examined it carefully, and find no rule of law incorrectly stated.

We find no prejudicial error in the proceedings. The judgment is accordingly affirmed.