The State v. Castor.

THE STATE v. CASTOR, *Appellant.*

1. **Criminal Law** : LARCENY FROM DWELLING-HOUSE. The value of the property is immaterial in a prosecution, under Revised Statutes, section 1309, for larceny from a dwelling-house.

2. —— : INSTRUCTION. On a trial for larceny, an instruction is erroneous which assumes that the defendant took the property.

3. —— : RECENT POSSESSION OF STOLEN PROPERTY. The rule that the recent possession of stolen property is presumptive evidence of guilt where larceny is charged, will not apply unless the possession is recent, unexplained, and exclusive.

4. ———: ———. The evidence in this case examined, and held not to meet the requirements of the rule as to the exclusiveness of defendant's possession.

5. Criminal Practice : EVIDENCE : RES GESTAE. Statements of the defendant made immediately upon being charged with the theft, and at the time his trunk, which contained the articles claimed to have been stolen, was searched, were part of the *res gestae*, and admissible in evidence both in his favor and against him.

6. ———: EVIDENCE INSUFFICIENT TO SUPPORT VERDICT. The evidence in this case held insufficient to support a conviction, the judgment reversed and the defendant discharged.

*Appeal from Daviess Circuit . Court.*—HON. C, H. S. GOODMAN, Judge.

REVERSED.

No brief for appellant.

*B. G. Boone,* Attorney General, for the state.

(1) The indictment is drawn under section 1309, Revised Statutes, and properly charges a larceny from a dwelling-house. Under this section the offence· is complete without reference to the value of the property stolen. *State v. Kennedy,* 88 Mo. 341, and cases cited. (2) The slightest removal, with intent to convert to the taker's own use, is sufficient to constitute a larcenous caption and asportation within the meaning of the statute. *State v. Higgins,* 88 Mo. 354. (3) The instructions given covered every phase of the case presented by the evidence. The defendant saved no exceptions at the time to the admission or exclusion of evidence, and will not be heard to complain. *State v. Burk,* 89 Mo. 635 ; *State v. Reed,* 89 Mo. 168 ; *State v. Rockett,* 87 Mo. 669. (4) The court holds further, that it is too late to make points as to the admission or rejection of testimony for the first time in the motion for a new trial. *State v. Peak,* 85 Mo. 190 ; *State v. Burnett,* 81 Mo. 119 ;

*State v. Williams*, 77 Mo. 310; *State v. Blan*, 69 Mo. 317.

SHERWOOD, J.—In March, 1884, the defendant hired himself to one Taylor Webb, as a farm-hand, for one hundred and seventy dollars per year, board, washing, and lodging. The house consisted of two rooms, a sitting-room, in which Webb, wife and child slept, and a kitchen, and in the latter the defendant slept. His trunk, a common, cheap affair, with a lock to match, was kept in the family sitting-room. This trunk was easily locked and unlocked by the key of the cupboard, which sometimes was in the cupboard-lock and sometimes lying loose about the house, which stood on a public road and near a church. In the sitting-room, on a stand-table, in a small toy trunk, which was not locked, were kept a gold finger-ring and shirt-studs. In the closet in the same room hung a pair of old half-worn pants, with the bottoms worn off.

On the thirtieth day of May, 1884, Taylor Webb and family went away from home, leaving the house unlocked, the defendant being absent, plowing in his employer's field, a mile distant from the house. On that day, decoration services were held at the church. Late in the afternoon of that day he returned to the house, bringing with him a load of corn, which he was engaged in unloading when Webb and his family returned. On that day, the ring, shirt-studs, and pants were missed from their accustomed places, but what time in the day does not appear. The wife of Webb did the defendant's washing, and twice prior to the thirtieth day of May, put defendant's clothing into his trunk, but not after that date. The trunk of the defendant was left unlocked part of the time and part of the time was kept locked, but was more often kept locked after the thirtieth day of May than before. Darius Webb, a brother of Taylor Webb, lived with the latter during

the time mentioned, and some time in July, 1884, he borrowed of the defendant his trunk-key to get into his trunk to procure blacking and brush. After procuring blacking and brush, Darius did not return the key to the defendant, but took it away with him the Sunday evening he got the key, being absent four days. On his return he gave the key to Webb's wife, who returned it to the defendant, out of whose possession it had remained during said period.

Some time after the thirtieth of May, on two occasions, Webb, the employer of the defendant, by permission of the latter, opened his trunk to get his razor to shave with. The latter part of August, 1884, and at night, during the defendant's absence, Webb and wife opened the defendant's trunk with the cupboard-key, and found therein the missing shirt-studs in a collar-box without a cover in the tray of the trunk, and lying loose among some collars in the box; the missing pants among the defendant's clothes in the trunk, and the missing ring in the defendant's socks, one turned over the other, with a handkerchief tied over them. On the next morning, at the request of Webb, his uncle, Smith, and his brother-in-law, Pruert, went to his house, and were present at the examination of the defendant's trunk, Webb having told them that he suspected the defendant of having taken the above-described property; but Webb did not tell them of having made the prior examination. On the same day that this second examination occurred, Webb made affidavit before a justice of the peace, and had a warrant issued for the defendant's arrest. When the defendant was arrested he was at work in the field, and upon the officer arresting him and charging him with the theft, the defendant denied all knowledge of the articles taken, and invited the officer to come with him and examine his trunk; unlocked his trunk for the officer; claimed the shirt-studs as his own, as being a gift from C. B.

Marksbury, but expressed surprise at the finding of the other articles, and denied all knowledge of how they could have gotten into his trunk. The ring was worth $9.50, the shirt-studs $1.75, and the pants $1.00.

There was also found in defendant's trunk, at the time it was examined by the officer, a pair of gloves which had been lost by one Patten, who had been at Webb's house in company with other young people about two weeks prior to the time of the arrest. In the defendant's trunk were also found four silk handkerchiefs of different kinds. About the middle of June, prior to the defendant's arrest, a visitor at Webb's house exhibited a handkerchief he had bought, and stated the price of it, whereupon the defendant exhibited two handkerchiefs and gave Webb's wife one, saying they cost him nothing. After the search of the defendant's trunk, Webb, the prosecuting witness, charged that the defendant had in his possession a day-book; this the defendant denied, and permitted the officers to search him, when the book was found in the defendant's hip-pocket. On this, defendant admitted the book (which was about written up, and of no value to any one except Webb) was Webb's, but said he had forgotten he had it, and that in it, lying loose, were some pictures Webb's wife had given him. During the summer, prior to the defendant's arrest, there had been croquet parties at his house, attended by the young people of the neighborhood. The testimony on behalf of the state also showed that the defendant was an industrious and excellent farm-hand while working for his employer, and that the ring belonged to Webb's wife. This, in brief, was the testimony on behalf of the state.

On his own behalf, the defendant testified that his age was twenty-two; that he knew nothing whatever as to how the ring and pants and gloves got into his trunk; that the shirt-studs were his own, obtained

The State v. Castor.

from C. B. Marksbury; that, on the thirtieth day of May, 1884, he was not in Webb's house from the time he left there in the morning (when Webb and family were there) to go to work until he returned in the evening after Webb and family had returned; that the handkerchiefs found in his trunk were his own property, two of them having been purchased by him, and the other two given him; that the day-book mentioned he had picked up on the croquet ground on the day previous to its having been found on his person, and that when asked for it had forgotten about having picked it up. By divers other witnesses the defendant established that they had known his general reputation in the neighborhood in which he resided from childhood up to the time of his arrest, and that it had always been good for honesty, fair dealing, truth and veracity.

On the preliminary examination before the magistrate, C. B. Marksbury, since deceased, testified that he had given the shirt-studs in question to the defendant, and that they were the defendant's. This, the evidence, I have here set out, in order to a better understanding of the case, which turns in large part upon the evidence. The defendant was indicted, under section 1309, for larceny from a dwelling-house, and being tried was found guilty, and his punishment fixed at two years in the penitentiary, whereupon he appealed to this court and is out upon bail.

I. The indictment is well enough and sets out the crime therein charged with all appropriate statutory averments, and under said section the value of the property stolen is immaterial.

II. The instructions given for the state are as follows:

"1. If the jury believe, from the evidence, that the defendant, at Daviess county, within three years next before October, 1884, took, stole, and carried away from

the dwelling-house of Taylor Webb the ring, shirt-studs, or pants described in the indictment, or either of said articles, and that the same were the property of Taylor Webb, with the intent to permanently deprive the owner of his property and to convert the same to his own use, then they will find the defendant guilty and assess his punishment at imprisonment in the penitentiary for a term of not less than two nor more than five years."

"2. If the defendant, after taking the said property, secreted the same in a trunk in the dwelling of Taylor Webb, with the intent to convert the same to his own use, then this is a carrying away within the meaning of the first instruction."

"3. The reasonable doubt that will authorize an acquittal in this case must be a substantial doubt arising from the facts and circumstances in proof and not a mere possibility of defendant's innocence."

"4. The defendant is a competent witness in his own behalf, but the fact that he is the party charged may be taken into consideration in determining what weight is to be given to his testimony."

"5. The jury are the sole judges of the weight of evidence and the credibility of witnesses, and if they believe that any witness has wilfully sworn falsely to any material fact in this case, they are at liberty to disregard the whole or any part of such witness' testimony."

"6. The recent possession of stolen property is presumptive evidence of guilt; therefore, if the jury find, from the testimony, that the property was found in the exclusive possession of the defendant recently after the same was stolen, then it devolves upon him to explain such possession to the reasonable satisfaction of the jury, and if he fails so to do, it is conclusive evidence of his guilt; but the court further instructs the jury that they ought to consider any evidence as to defendant's good

character as tending to rebut the presumption of guilt arising from the recent possession of the stolen goods.''

At the instance of the defendant, the court gave these instructions:

"1. The court instructs the jury that the law presumes the defendant innocent of the crime charged against him, and it devolves upon the prosecution to establish his guilt, by proof, to the reasonable satisfaction of the jury beyond a reasonable doubt; and if, upon a full consideration and comparison of all the circumstances in proof, a reasonable doubt exists in the minds of the jury, they ought to find him not guilty.''

"2. Before the jury find the defendant guilty on circumstantial evidence, they must believe the facts and circumstances in proof consistent with his guilt and inconsistent with any other reasonable hypothesis; and in this case it is not enough that the facts and circumstances proven must exclude to a moral certainty every other reasonable hypothesis than that of his guilt.''

The following instruction was asked on the part of defendant, but the court refused to so instruct:

"4. The court instructs the jury that recent possession of stolen property is presumptive evidence of guilt; but such presumption of guilt becomes weaker as the time between the taking of the property and the finding of the same in defendant's possession increases; and unless such possession is explained, either by direct evidence or attending circumstances of the character and habits of the defendant, or in some other way equally consistent with defendant's innocence, will be taken as conclusive.''

The second instruction, given at the instance of the state, is erroneous, in that it assumes that the defendant took the property.

III.   It becomes unnecessary to criticise the other instructions on the part of the state, except the sixth. In order for the disputable presumption of law to apply

in cases where larceny is the charge, the possession must be recent, unexplained, and exclusive. Whart. Crim. Evid., section 758 and cases cited. What is recent possession depends on the nature, value, and portability of the property. The reason why recent possession is held, *prima facie*, to be guilty possession, is that it occurs so soon after the theft takes place as to be, at first view, not perfectly consistent with innocence. 3 Greenl. Evid., sec. 32.

In some cases, three months elapsing between the occurrence of the theft and the finding of the goods in the possession of the prisoner, an acquittal has been directed (*Rex v. Adams*, 3 C. & P. 600 ; *Hall's Case*, 1 Cox C. C. 231), the articles being an axe, saw, etc. But in another case, where the articles were two unfinished ends of woolen cloth, of twenty yards each, and only two months had elapsed between the time they were missed by the owner and found with the prisoner, the possession was deemed sufficiently recent to hold the prisoner to account for it. *Rex v. Partridge*, 7 C. and P. 551. In other cases the whole matter has been left at large to the jury to exercise their province in considering what weight ought to be given to the evidence. *Reg. v. Hewlett*, 2 Russ. on Crimes (by Greaves) 728. And the general rule is that, where a man, in whose possession stolen property is found, gives a reasonable account of how he came by it, the prosecutor has to show the acccount is false. 3 Greenl. Evid., sec. 32. And, as before remarked, the possession to be guilty possession must be exclusive.

On this point the author just cited states : "But to raise the presumption of guilt from the possession of the fruits of the instruments of crime by the prisoner, it is necessary that they be found in his *exclusive possession*. A constructive possession, like constructive notice or knowledge, though sufficient to create a *civil* liability, is not sufficient to hold the party responsible to a *crim-*

*inal* charge.    He can only be required to account for the possession of things which he actually and knowingly possessed ; as, for example, where they are found upon his person, or in his private apartment, or in a place of which he kept the key.    If they are found upon premises owned or occupied as well by others as himself, or in a place to which others have equal facility and right of access, there seems no good reason why he, rather than they, should be charged upon this evidence alone." 3 Greenl. Evid., sec. 33.    In another place the same author, speaking of the subject of guilty possession, says : "If unexplained, either by direct evidence, or by the attending circumstances, or by the character and habits of life of the possessor, or otherwise, it is taken as conclusive."    1 Greenl. Evid., sec. 34 ; *State v. Williams,* 54 Mo. 170.

And what the defendant said in this case immediately upon being charged with the theft, when his trunk was searched, was part of the *res gestae,* was admissible in evidence in his favor as well as adversely to him.    2 Bishop Crim. Proc., sec. 746 ; Whart. Crim. Evid., sec. 761.    In this case, even if it be held that the possession of the defendant was recent, *i. e.,* some two months and a half from the time the articles were missed until they were discovered in his trunk, still proof of his good character was sufficient to go to the jury in rebuttal of the presumption of guilt arising from such recent possession.    And if his statement concerning the goods, made on the spur of the moment, without time to concoct a story for the occasion, appeared to the jury, considering all the circumstances, to be reasonable, and was not shown by the prosecution to be false, its weight in the scale for him was very considerable.    2 Bishop Crim. Proc., *supra.*    Certainly, his story as to the shirt-studs was fully corroborated by the testimony of the deceased witness, Marksbury, and there was no contradiction of that witness' testimony.    The jury also had a

right to consider, as part of the *res gestae*, the manner of the defendant expressive of his willingness to have the officer search his trunk.

In the circumstances already detailed in evidence I cannot regard the possession by the defendant of the articles alleged to have been stolen as an exclusive possession, seeing that, by his permission, the prosecuting witness had access to his trunk, and on two occasions, some time after the articles were missed, had opened it to get the defendant's razor; seeing that also the defendant, in July, lent his key to Darius Webb, to get blacking and brush, which key remained with the borrower some four days; seeing that also the trunk was frequently left unlocked, and moreover could be unlocked and was unlocked by the prosecuting witness with the cupboard-key, and could have been unlocked as easily by others familiar with the *locus in quo*. As already seen, if the defendant's possession was not an exclusive one, there was no ground on which to base the presumption aforesaid. Lacking either of the three constituent elements I have mentioned, the presumption could not spring into being.

In relation to the defendant's claim that the ring and pants never came into his trunk with his knowledge, it was proper for the jury to consider how far the conduct of the prisoner, in reference to his trunk, tallied with his defence in that particular. Roscoe Crim. Evid., p. 21. It would scarcely seem probable that the defendant, knowing the stolen goods were in his trunk, would have been so indifferent as to its custody. This, however, was a matter for the jury. The idea embodied in the fourth instruction asked by the defendant finds support in the authorities (2 Bishop Crim. Proc. 743, and cas. cit.) but I have deemed it unnecessary to discuss that instruction for reasons already set forth.

IV. Relative to other articles found in the possession of the defendant, if it had been established that

they had been stolen, this fact would doubtless have greatly helped the case of the state ( 3 Greenl. Evid., sec. 31 ), but no such proof was offered.

V.   Looking carefully over the whole record, as is our statutory duty, though no brief or assignment of errors be filed, I am constrained to say that there is no evidence on which a verdict of guilty should be permitted to stand.

The result of which view is that the judgment is reversed, and the defendant discharged.   All concur.

| 93 | 253 |
| 44a | 123 |

| 93 | 253 |
| 108 | 6 |

| 93 | 253 |
| 54a | 462 |

| 93 | 253 |
| 74a | 337 |

| 93 | 253 |
| 87a | 502 |

| 93 | 253 |
| 101a | 1675 |