THE STATE v. OWSLEY, *Appellant.*

Division Two, September 20, 1892.

1. **Criminal Law:** LARCENY: RECENT POSSESSION OF STOLEN PROPERTY.
Where in a trial for burglary and larceny there is evidence that part
of the property stolen was shortly afterwards found in the exclusive
possession of defendant, it is not error to refuse to direct a verdict of
acquittal.

2. ———: ———: ———. The fact that part of the stolen property was
found at the house of defendant's wife with whom he was not at the
time living, is not sufficient to raise a presumption that he stole it.

3. ———: INSTRUCTIONS: PREJUDICIAL ERROR. Where the instructions
as construed by the argument of counsel are misleading and prejudi-
cial to appellant, the judgment will be reversed.

*Appeal from Buchanan Criminal Court.*—HON. SILAS
WOODSON, Judge.

REVERSED AND REMANDED.

*F. S. Winn* and *T. F. Ryan* for appellant.

*John M. Wood,* Attorney General, for the State.

(1) No error was committed by the court in
giving instruction, numbered 2, for the state. The
presumption of guilt arising from the recent possession
of stolen property applies both to the burglary and
larceny. *State v. Warford,* 106 Mo. 55. (2) The
evidence shows defendant is guilty, and the judgment
should be affirmed.

MACFARLANE, J.—Defendant was jointly indicted
with Edward Wells, George Wingeiter, Rose Owsley
and Sadie Owsley, in the criminal court of Buchanan

county, for burglary in the second degree and grand lar-
ceny, by breaking into a store building of Josiah Lam-
port and stealing therefrom a lot of revolving pistols,
some gold and plated rings and chains, a gold watch
and chain and some money, the property of said
Lamport.

Defendant was tried separately, found guilty of
both burglary and larceny, and was sentenced accord-
ingly. From the sentence he has appealed to this
court. He has filed no assignment of errors or brief,
and we are-required to examine the whole record to
ascertain if he has just ground to complain of the pro-
ceedings under which he was convicted.

It appears from the evidence that the store of
Lamport was burglarized about the fifteenth of Decem-
ber, 1889, and a number of pistols and a watch and chain
stolen therefrom. About the twenty-second of Janu-
ary, 1890, a dwelling occupied by Edward Wells and
George Wingeiter and Rose and Sadie Owsley was
raided by the police and these parties and defendant
were found in the house and arrested. Several pistols
were found concealed about the premises, which were
identified as of those stolen from Lamport. The stolen
watch and chain were found in the pocket of defend-
ant.

The two Owsley girls were daughters of defendant,
and were living with Wells and Wingeiter in the house
in which they were arrested. Defendant and his wife
had their residence in another part of the town, and
two of the stolen pistols were found in this residence.
This was in substance the evidence of the prosecution
in chief. A demurrer to the evidence was here inter-
posed by defendant, which was denied and an excep-
tion saved.

The evidence on the part of defendant was, in
substance, that the burglary and larceny was commit-

ted by Wells and Wingeiter, without the knowledge of defendant, either before or after the act; that the goods were taken to their house about the middle of December, 1889, at which time defendant was living with his wife in their residence; that when the stolen goods were brought to the house of Wells and Wingeiter, Rose Owsley, who was living with them, took the stolen watch as her part of the spoils; that some five or six days before the arrest defendant, at the request of his daughters, came to their place, and had slept there until the arrest. The reason given for his going there to live was that the girls were sick with the "grip," and he went to wait on them. While there he took the watch from the center table by permission of Rose for the purpose of enabling him to know the time he wanted to get out of bed the next morning. This was the explanation given of his possession.

Evidence was offered by defendant tending to prove that his hearing was so bad that he could not understand a conversation in an ordinary tone. No evidence was offered to explain how the two pistols came to be at defendant's residence.

These facts were disclosed principally by the testimony of the defendant and the parties jointly indicted with him. The evidence tended to prove that defendant had a fairly good character and was industrious. The character of those jointly indicted with defendant was bad.

Complaint is made in the motion for a new trial to the following instruction: "2. The court instructs the jury that recent possession of personal property obtained by and through a burglary, if unexplained to the reasonable satisfaction of the jury that such possession is not a guilty possession, is presumed by the law to be a guilty possession, and such presumption becomes

conclusive upon the defendant that such possession is a guilty possession both as to the burglary and larceny, unless he shall satisfy the jury from all the evidence in the case that such possession is not a guilty possession; but the court further instructs the jury if they believe from the evidence in the case such presumption of law aforesaid is not corroborated or strengthened by other evidence as to the commission of the offense, such presumption may be rebutted by the fact of the defendant's good character, if they believe he had a good character from the evidence in the case.''

A new trial was asked on the ground of newly discovered evidence. Affidavits of defendant and his wife were filed in support of this motion. The affidavit of defendant was to the effect that owing to his defective hearing he did not know that a witness had sworn that two of the stolen pistols were found at his residence, nor did he know that they were so found until after the trial. He also stated that he had no knowledge that the pistols were at his residence. The affidavit of the wife and one John Kuley were to the effect that the pistols were brought in a trunk of her daughter, Rose Owsley, to the house of Mrs. Owsley, a week after defendant had been arrested.

On the other hand, affidavits were read by the prosecuting attorney to the effect that, in a preliminary examination made shortly after the arrest, witness had testified, in the presence of defendant and his witnesses, that these two pistols had been found at the residence of the wife of defendant. It also appeared from the affidavits that defendant's wife was present at the trial as a witness, but was not examined.

I.   The evidence that the watch and chain, which was a part of the stolen property, was found in the exclusive possession of defendant was sufficient to raise a presumption that he was guilty of both the burglary

and larceny, and there was no error in refusing to direct an acquittal at the close of the evidence offered by the state in chief. *State v. Warford*, 106 Mo. 62; *State v. Edwards*, 109 Mo. 315. After the possession of defendant was shown by the state the burden of explaining how he came by it, or that he came by it honestly, was cast upon him. *State v. Kelly*, 73 Mo. 615.

II. The second instruction, which was complained of in the motion for a new trial, embodies correct declarations of the law as to the presumption arising from the recent possession of stolen property. It is, however, when taken alone, rather abstract to constitute a safe guide to a jury. The jury was told, in the third instruction given at request of defendant, that if they should "believe that the defendant in this case has given a reasonable explanation of his possession of the property charged to have been stolen, and afterwards found in his possession, then the jury should acquit the defendant."

There is no doubt the watch was found in the exclusive possession of defendant. It was in his pocket. This he admitted. The court in another instruction, giving the defendant the benefit of his own testimony, tells the jury that "if defendant did not actually aid, assist and advise the commission of said burglary, but that he found the watch lying on the center table in the room occupied by the other parties indicted with the defendant, and that he only had the watch in his possession to enable him to know the time he wanted to get out of bed next morning, then the possession of the watch was not criminal and affords no evidence of his complicity in the burglary and larceny mentioned in the indictment." These instructions taken together submit the issues to the jury very favorably to defendant if they understood the watch to have been the only

article of the stolen property found in the possession of defendant. Can we say that they so understood?

III. The evidence does not show when the two revolvers were found in the house occupied by defendant's wife, nor any circumstances to prove that they were in the possession of defendant when found. The witness simply testified: "Two of those [revolvers] we found up at Mrs. Owsley's place." The evidence offered by defendant showed that the Mrs. Owsley mentioned was the wife of defendant, but it showed further that defendant was not, at the time of the arrest, living with his wife. We do not think the evidence that two of the revolvers were found at "Mrs. Owsley's place" sufficient to raise a presumption that defendant stole them. The possession of the wife could not under those circumstances be regarded as the exclusive possession of the husband. 3 Greenleaf on Evidence, sec. 33; *State v. Castor*, 93 Mo. 250.

IV. Defendant's attorney supported his motion for a new trial by his own affidavit in which he said: "The prosecuting attorney, in his argument to the jury, stated that two revolvers had been found at the house of John Owsley, and that he had not attempted to explain his possession of them, and that in case of recent possession of stolen property without explanation the presumption of guilt becomes conclusive."

In opposition to the motion the prosecuting attorney testified "that he never did, on the trial of said cause, state, claim or contend that the two revolvers found at the house of Mrs. Owsley were ever found in the possession of John Owsley, *but argued only as a circumstance to refute and act against any proof of good character*. That the matter was never presented in the light that such said possession was his possession."

It is very clear to us that the instructions and the arguments of counsel, though unintentional, were calcu-

lated to lead the jury into the belief that the personal property mentioned in the instructions, as being in the possession of the defendant, included the two revolvers found "up at Mrs. Owsley's place." Such a construction placed upon the instructions by the jury was misleading and very prejudicial to defendant, for there was no pretense that he explained such possession. Only the watch and chain were found in the possession of defendant, and, as there was other personal property stolen, the instructions should have specified the property referred to therein.

Reversed and remanded.    All concur.