## GRANTELLO v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. November 12, 1924.)

No. 6555.

**1. Poisons ⊕⇒9—Possession by wife living separate from husband creates no presumption of husband's guilt.**

The possession of narcotics, denounced by Harrison Anti-Narcotic Act (Comp. St. §§ 6287g, 6287h), by a wife in the house occupied by her while living separate and apart from her husband, is insufficient to raise any incriminating presumption of husband's guilt.

**2. Criminal law ⊕⇒369(1)—Reception of evidence of other offenses error, where no question of intent in issue, and no connection between offenses shown.**

To receive evidence of like offenses to those charged in indictment under which defendant is on trial is neither competent, fair, nor just, where no question of intent is in issue, and no connection between such offenses and those charged is proved.

**3. Criminal law ⊕⇒372(1)—Evidence of other offenses held inadmissible, in absence of evidence to show defendant's dominant possession.**

In prosecution of husband and wife for possession of narcotics, where defendants were living apart, and there was no substantial evidence of husband's dominant possession, testimony showing other offenses was inadmissible to show husband to be dealer.

**4. Poisons ⊕⇒9—Evidence of wife's possession held insufficient to sustain conviction of husband living apart from her.**

In a prosecution of husband and wife for possession of morphine, in violation of Harrison Anti-Narcotic Act (Comp. St. §§ 6287g–6287q), in view of evidence that husband has separated and lived apart from his wife for more than six months prior to raid in which morphine was discovered in wife's residence, evidence held insufficient to sustain husband's conviction, or even to make his guilt jury question.

**5. Criminal law ⊕⇒656(7), 721(1)—Defendant's failure to testify protected from unfavorable comment, unless he voluntarily testifies to merits.**

Under the Fifth Amendment and Act Cong. March 16, 1878 (Comp. St. § 1465), a defendant failing to testify is protected from unfavorable comment on his silence by court or counsel, unless he voluntarily becomes a witness and testifies on his own behalf to the merits, or to material part of merits, of offense charged.

**6. Criminal law ⊕⇒787(1)—Instruction commenting on defendant's failure to testify error, though defendant took stand and testified as to name.**

Where defendant was called to stand, but asked no question other than to state his name, an instruction that jury could draw unfavorable inferences from defendant's failure to testify as to merits was error; his testimony not being a waiver of protection guaranteed by Const. Amend. 5, and Act Cong. March 16, 1878 (Comp. St. § 1465).

In Error to the District Court of the United States for the Western District of Missouri; Albert L. Reeves, Judge.

Frank Grantello was convicted of violating the Harrison Anti-Narcotic Act (U. S. Comp. St. §§ 6287g, 6287h), and he brings error. Reversed and remanded.

Harry L. Jacobs, of Kansas City, Mo. (Julius C. Shapiro, Frank Benanto, and Rader & Rader, all of Kansas City, Mo., on the brief), for plaintiff in error.

Samuel M. Carmean, Sp. Asst. U. S. Atty., of Kansas City, Mo. (Charles C. Madison, U. S. Atty., of Kansas City, Mo., on the brief), for the United States.

Before SANBORN and LEWIS, Circuit Judges, and KENNEDY, District Judge.

SANBORN, Circuit Judge. The writ of error in this case presents for review rulings of the district court below in the proceedings which resulted in the conviction of the defendant, Frank Grantello, of violations of the Harrison Anti-Narcotic Act (U. S. Comp. St. §§ 6287g, 6287h), under three counts of an indictment against him and his wife, Laura Grantello. The first count of that indictment charged that on or about March 27, 1923, they had in their possession for sale in violation of that act about 40 ounces of morphine; the second, that in violation of that act, on or about March 29, 1923, Laura Grantello sold to Mary Shreves about two grains of morphine, and Frank Grantello aided and abetted her in making that sale; and the third, that in violation of that act Frank Grantello and Laura Grantello, on or about the 29th day of March, 1923, bought about 40 ounces of morphine. The defendant Frank Gran-

tello was tried under this indictment, and Laura Grantello pleaded guilty to it. All the evidence at the trial is presented in the record, and an examination of it and of the objections, the rulings, exceptions, and charge have left no doubt that the decisive issue of fact in this case was whether or not the defendant Frank Grantello was in possession of the 40 ounces of morphine on or about March 29, 1923.

Among the errors of law assigned is the refusal of the court to instruct the jury, as requested by counsel for the defendant, to return a verdict in his favor at the close of all the evidence on the ground that "evidence of facts that are as consistent with innocence as with guilt is insufficient to sustain a conviction. Unless there is substantial evidence of facts which exclude every other hypothesis but that of guilt, it is the duty of the trial court to instruct the jury to return a verdict for the accused; and where all the substantial evidence is as consistent with innocence as with guilt, it is the duty of the appellate court to reverse a judgment of conviction." Vernon v. United States, 146 F. 121, 123, 76 C. C. A. 547, 549; Union Pacific Coal Co. v. United States, 173 F. 737, 740, 97 C. C. A. 578; Sullivan v. United States (C. C. A.) 283 F. 865, 868; Wright v. United States, 227 F. 855, 857, 142 C. C. A. 379; Willsman v. United States (C. C. A.) 286 F. 852, 856.

The government sought to convict the defendant on the ground that he was in possession of the 40 ounces of morphine on or about March 27, 1923, and, thereafter when, on March 29, 1923, the sale was made by Laura Grantello and the 40 ounces of morphine were discovered and seized by the officers. No witness, however, came to testify nor was there any direct evidence that the defendant was ever in possession or control of this morphine and at the close of the trial the direct evidence was that the 40 ounces of morphine were discovered by the officers of the government in the house at 3117 East Tenth street, Kansas City, Mo., on March 29, 1923, where the defendant and his wife had lived together prior to September, 1922, but where she was, and had been since August, 1922, living apart from her husband with her children and a boarder. There had been no direct evidence or testimony that the defendant ever saw or knew of this 40 ounces of morphine, of its presence in that house, or that he had at any time any joint or other possession or control thereof. His conviction rests on the possession of his wife, circumstantial evidence, and presumptions.

[1] But the possession of the instruments or fruits of crime by a wife in the house occupied by her while she is living there separate and apart from her husband is insufficient to raise any incriminating presumption of possession or control thereof or of guilt by her husband. State v. Owsley, 111 Mo. 450, 455, 20 S. W. 194; State v. Drew, 179 Mo. 315, 323, 78 S. W. 594, 101 Am. St. Rep. 474; State v. Castor, 93 Mo. 242, 250, 5 S. W. 906. Possession of the instruments or fruits of crime by a defendant in order to be incriminating must have been known to him, actual, dominant, with plenary power of disposition. 3 Greenleaf on Evidence, § 32; Sorenson v. United States, 168 F. 785, 798, 94 C. C. A. 181; Underhill on Criminal Evidence, § 469; Jackson v. State, 28 Tex. App. 143, 12 S. W. 701; State v. Belcher, 136 Mo. 137, 37 S. W. 800; State v. Warford, 106 Mo. 55, 63, 64, 16 S. W. 886, 27 Am. St. Rep. 322; State v. Scott, 109 Mo. 226, 19 S. W. 89; People v. Hurley, 60 Cal. 74, 76, 77, 78, 44 Am. Rep. 55.

At the trial these facts were admitted or conclusively established by the evidence: Prior to about September, 1922, the defendant and his wife had been living together with their children at the house numbered 3117 East Tenth street in Kansas City, Mo. That number was his post office and telephone address; there his mail was delivered. He had an automobile. His automobile license bore that number, and he kept it in one of the four garages at that place. On or about March 29, 1923, acting for the government to enforce the Anti-Narcotic Act (Comp. St. §§ 6287g–6287q), officers entered the room of Mary Shreves, an addict, and her husband, when they were in bed, made her get up and dress, gave her $9, took her to 3117 East Tenth street, sent her into the house with instructions to buy morphine, and if she did so to stop at the door when she came out and signal them. She went into the house and bought 60 grains of morphine from Mrs. Grantello, came out, and signaled them. Thereupon, without any search warrant, they went into that house, searched it, and in a room on the second story found in a suit case and took the morphine.

In addition to these conceded facts the government, over proper objections and exceptions, introduced the testimony of John Gunderson, an addict, to the effect that about April 5, 1923, he bought of defendant morphine which was delivered to him three or four blocks from the Grantello house; that prior to March 27, 1923, he had

bought morphine three or four times at the Grantello house, but that he never bought any of the defendant; that he was an addict and needed about two grains of morphine a day; that when he was short the government officers furnished him with morphine; that he came to testify under a subpœna, and when he came he did not know which way he was going to testify. Mr. Prewitt, another witness for the government, over proper objections and exceptions, testified that about May, 1922, he met the defendant at Fifteenth and Grand avenues in Kansas City and bought a small quantity of morphine of him, and that prior to the year 1922 he also bought a small quantity of morphine from him. With the exception of the testimony which will be treated later, relative to the question whether or not the defendant was living with his wife at 3117 East Tenth street when the morphine was seized and Mrs. Grantello made the sale to Mrs. Shreves, the foregoing was all the evidence presented by the government in support of its charge that the defendant was in possession of the morphine when the officers took it, or of its charge that he aided or abetted Mrs. Grantello in making the sale to Mrs. Shreves, or of the charge that he, jointly with his wife, purchased, on or about the 29th day of March, 1923, 40 ounces of morphine.

[2, 3] The defendant had demurred to each count of the indictment on the ground that it was insufficient, and did not set out the facts and circumstances of the offense, so as to apprise him with what he was charged, or to enable him to prepare his defense, and those demurrers were overruled. He presented to the court below a petition for a bill of particulars under each count of the indictment on the same ground, and that petition was denied. He was not charged in the indictment with any of the sales, possessions, or offenses about which Gunderson and Prewitt testified, nor was he on trial for any thereof. They were in no way connected with any of the offenses charged in the indictment, and no question of the intent of the defendant was material or in issue in this case. It is neither competent, fair, nor just to a defendant to receive evidence against him of like offenses to those charged in the indictment under which he is on trial, where no question of his intent is in issue, and no connection between such offenses and those charged is proved. Marshall v. United States, 197 F. 511, 513, 515, 117 C. C. A. 65; Scheinberg v. United States, 213 F. 757, 760, 130 C. C. A. 271, Ann. Cas. 1914D, 1258; Fish v.

United States, 215 F. 544, 551, 552, 132 C. C. A. 56, L. R. A. 1915A, 809. If there had been substantial evidence of the defendant's dominant possession of the 40 ounces of morphine when it was seized, it may be that the testimony of Gunderson and Prewitt would have been admissible to show that he was a dealer; but there was no such substantial evidence, and in the absence of it the testimony of Gunderson and Prewitt was immaterial and negligible.

[4] We turn to the remaining question: Was there substantial evidence that the defendant was living with his wife at No. 3117 East Tenth street on March 29, 1923, when the morphine was found and seized? The claim of the defendant was that he separated from his wife in August, 1922, and did not live with her in the Grantello house, or take any meals there between August, 1922, and some time subsequent to March 29, 1923, when the discovery and seizure were made. This was the substance of the evidence on that subject for the government: Officer Whistler testified, over proper objections and exceptions, that he gained information and was informed by Officer Gregory, who was dead, that prior to August, 1922, Grantello lived in the Grantello house at 3117 East Tenth street. That evidence, received over objection, was hearsay and incompetent, and it was error to receive it.

J. L. Clarke, called by the government, testified that he was the postman in the district of the Grantello house and that he delivered mail there for Frank Grantello and to him in March, 1923. Mrs. Henry Selbin, for the government, testified that she lived at 3115 East Tenth street and that, so far as she knew and had observed, the defendant lived at 3117 East Tenth street in March, 1923; that she saw him there every few days. On cross-examination, asked if she ever visited the Grantellos, she testified that she had been in their house two or three times in four years; that she did not know whether they had any roomers, that she went in to use their telephone, and she did not notice whether Mr. Grantello was there or not. Mr. Kaufman, a druggist whose store was at 3100 East Ninth street, having been sworn for the government, testified that he passed the Grantello house three or four times a day on his way home, and it was a rare occasion when he saw Mr. Grantello there; that he could not say—could not swear—that he lived there. He further testified that his account was with Mrs. Grantello.

In behalf of the defendant, Mr. Kaufman's son, Jerome, testified that he went to

the Grantello house about three times a day in March, 1923, and for some months prior to that time; that he and Marie Grantello, daughter of the defendant, went to high school together; and that the defendant was not living there on March 29, 1923, or for months before that time, but that he had some chickens there, and would come over and speak to the children, and bring chickens there, and take others away. Charles Grantello, son of the defendant, 21 years old, testified that he lived in the Grantello house from August, 1922, until February 12, 1923, when he moved with his wife into a house across the street; that his father was not living at the Grantello house on the day of the seizure of the morphine and the arrest of his mother, and had not been so living there since August, 1922, when his father and mother separated; that at the time of the seizure his mother, his brother, his sister, and a Mr. Certin were at the house; that after the separation, in August, 1922, his father lived at his father's home, 906 Holmes street; that his father came once or twice a week to see the children and tend his chickens; that he kept his car in the garage there, and his boys and Mrs. Grantello had the principal use of it; that there were four garages at the house and his mother rented and took the rents for the other three; that his father took no meals at the house. Nadine Grantello, the wife of Charles, testified that she was married on December 6, 1922, and lived in the Grantello house with Mrs. Grantello from that time until February 12, 1923, and then across the street, and that the defendant did not live in the Grantello house between August, 1922, and some time after the seizure and arrest on March 29, 1923. Marie Grantello, a sister of Charles, testified that she lived in the Grantello house from August, 1922, until the seizure and arrest, and that during that time her father never lived there, and never spent a night there. To the same effect is the testimony of Louis Grantello, the brother of the defendant. The defendant was sworn and testified that he was Frank Grantello, and gave no other testimony.

All the direct testimony upon this question has now been recited. The result is that all the witnesses who had intimate and actual knowledge of the facts testified that the defendant was not on March 29, 1923, when the morphine was found and seized, and had not been for more than six months, living with his wife or in the house where this morphine was found; that those who testified otherwise showed themselves to have had so little knowledge on the subject that their testimony is neither substantial nor reliable; that, in view of the fact that for many years prior to August, 1922, the defendant had lived with his wife at 3117 East Tenth street, and that that number had been his post office address, his telephone address, and the address borne by his automobile license, the fact that he had not changed them before the seizure is not inconsistent with the positive and compelling testimony that he was not on March 29, 1923, and for many months had not been, living in the Grantello house or with his wife at that place; and in the absence of any substantial evidence that the defendant had any knowledge of the existence or location of the 40 ounces of morphine, much less any control or possession thereof, before or when it was taken, and in the absence of any evidence of his knowledge of his wife's sale or intention to sell any of this morphine, or of any purchase of it, the evidence and testimony in the record in this case have forced our minds to the conclusion that the verdict upon each of the counts of the indictment is without substantial evidence to support it. Not only does it appear to us that all the substantial evidence in this case is as consistent, but it appears to us that it is more consistent, with the innocence than with the guilt of the defendant, and is far from excluding every other hypothesis than that of his guilt. In our opinion it was error for the court below to fail to instruct the jury to return a verdict for the defendant in this case, and there must be a new trial.

During the trial of this case the defendant was called by his counsel, sworn to tell the truth, asked by his counsel to state his name to the court and jury, and he answered, "Frank Grantello." He was asked no other question—requested to give and gave no other testimony. In view of these facts, the judge charged the jury in this way:

"You have a right, gentlemen, in your deliberations, to take into account the fact that Frank Grantello did take the witness stand, and have a right to draw any kind of inference that you may care to draw from the fact that he gave no testimony, save alone that he announced his name. He was on the witness stand. He could have told you the whole story about where he lived. He could have told you as to whether or not he owned these narcotics. He could have told you as to whether or not they were in his possession. He could have told you as to whether or not he made a sale or delivered the narcotics to Gunderson, who testified that he did. He was on the witness stand,

and could have told you whether he made the sale to Prewitt or not. He was on the witness stand, with an opportunity to deny all the charges that were made against him and all the testimony. He could have given you the most exact testimony as to whether 3117 East Tenth street was his home, or whether it was not. You heard his testimony. He elected not to give that information. It is for you to say under all the circumstances whether or not he is guilty under all three of the counts. He could have told you whether he aided and abetted his wife in making the sale to Mary Shreves; whether he made any purchase in or from any original stamped package. Take into account, however, gentlemen of the jury, that in determining what weight and what credibility you will give to his testimony, such testimony as he gave, take into account the fact that he came upon the witness stand, and gave his name and retired, and in considering that keep in mind he is the defendant and on trial."

Counsel for the defendant excepted to this part of the charge, and assigned it as error. The Fifth Amendment to the Constitution of the United States contains this prohibition: "Nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself." Act Cong. March 16, 1878, c. 37, 20 Stat. 30, U. S. Comp. Stat. § 1465, provides that, in the trial of all indictments against persons charged with the commission of crimes, offenses, and misdemeanors in the United States courts, "the person so charged shall, at his own request, but not otherwise, be a competent witness; and his failure to make such request shall not create any presumption against him."

[5] It is now the established rule in the courts of the United States that under these provisions a defendant in a criminal case, by failing to testify, is protected from unfavorable comment upon his silence by court or counsel, but that, if he voluntarily becomes a witness and testifies on his own behalf to the merits, or to a material part of the merits, of the case, or of the subject-matter of the offense charged against him, he waives his privilege of silence, and his privilege of freedom from fair comment upon his testimony, and upon his failure to testify to parts of the merits of the case upon which he gives no testimony. Caminetti v. United States, 242 U. S. 470, 490, 493, 495, 37 S. Ct. 192, 61 L. Ed. 442, L. R. A. 1917F, 502, Ann. Cas. 1917B, 1168;

Diggs v. United States, 220 F. 545, 563, 136 C. C. A. 147.

[6] No decision or opinion, however, has been cited or discovered to the effect that the voluntary testimony of a defendant to a fact not in controversy at the time of his testimony, nor relevant to the issues in or the merits of the actual controversy relating to his guilt, has any such effect. The rule cited above rests upon the sound reason repeatedly stated in the opinions of the courts, and nowhere more clearly than by Circuit Judge Gilbert in the Diggs Case, 220 F. 563, 136 C. C. A. 147, that "the defendant, having taken the stand and offered his testimony upon the merits of his case, and having entered into it in part, rendered himself amenable to cross-examination as to the whole. * * * A defendant cannot tell a half story touching his defense, which is a half story from his standpoint of the merits of the case, then abruptly stop in his course and decline to answer further, and expect to reap the benefit for himself to be derived therefrom, without incurring the discredit that is, by the rules of evidence and legal inference, visited upon the ordinary witness pursuing a like course." Fitzpatrick v. United States, 178 U. S. 304, 315, 20 S. Ct. 944, 44 L. Ed. 1078; State v. Ober, 52 N. H. 459, at page 464 (13 Am. Rep. 88), in which the court said, "Having testified concerning a part of the transaction, in which it was alleged that he was criminally concerned, without claiming his constitutional privilege, it was too late for him to halt at that point which suited his own convenience;" Brown v. Walker, 161 U. S. 591, 597, 16 S. Ct. 644, 647 (40 L. Ed. 819), where the court said, "Thus, if the witness himself elects to waive his privilege, as he may doubtless do, since the privilege is for his protection, and not for that of other parties, and discloses his criminal connections, he is not permitted to stop, but must go on and make a full disclosure."

The case in hand, however, does not fall under the reason of this rule, and where the reason of the rule does not exist the rule itself is inapplicable. Broom's Legal Maxims, 160. The defendant did not testify regarding any of the merits of his case, or any of the issues relating to his guilt or innocence of any of the charges against him, and did not subject himself to cross-examination regarding any thereof. His only testimony was that his name was Frank Grantello. It is a fundamental principle of our government, repeatedly emphasized and applied by the Supreme Court, that the provisions of its Constitution and statutes for the

protection of the rights and privileges of its citizens accused of crimes shall not be limited, qualified, or frittered away, but shall be fairly and broadly construed and enforced for their protection. Brown v. Walker, 161 U. S. 591, 596, 631, 16 S. Ct. 644, 40 L. Ed. 819; Gouled v. United States, 255 U. S. 298, 304, 41 S. Ct. 261, 65 L. Ed. 647; Counselman v. Hitchcock, 142 U. S. 547, 582, 12 S. Ct. 195, 35 L. Ed. 1110. Because the facts of this case did not bring it within the reason of the rule that a defendant charged with crime, who voluntarily testifies to the merits, or to a part of the merits, of his case, waives his privilege of silence as to other parts thereof, and of protection from comment by court or counsel upon his failure to testify to other parts to which he did not refer, the defendant in this case, in our opinion, by testifying that his name was Frank Grantello, did not waive his privilege of silence, or his privilege of protection from comment by court or counsel on his failure to testify to the merits of his case, and the charge upon this subject was erroneous.

Counsel for the defendant has assigned other alleged errors, but, as the case must be tried again, the consideration and discussion of them is omitted. Let the judgment below be reversed, and let the case be remanded to the District Court, with directions to grant a new trial.