### HOOD v. UNITED STATES.
### No. 596.

Circuit Court of Appeals, Tenth Circuit.

May 21, 1932.

LEWIS, Circuit Judge, dissenting.

E. J. Doerner, C. B. Stuart, and B. A. Hamilton, all of Tulsa, Okl., for appellant.

John M. Goldesberry, U. S. Dist. Atty., and Harry Seaton, Asst. U. S. Dist. Atty., both of Tulsa, Okl.

Before LEWIS and COTTERAL, Circuit Judges, and VAUGHT, District Judge.

VAUGHT, District Judge.

The defendant appeals from a conviction under three counts of an indictment which charged possession of spirituous intoxicating liquor, transportation of whisky, and the sale of whisky to William F. Houston, all on April 20, 1931, at 1029 East Archer street in the city of Tulsa, Okl. The fourth count charges possession of home-brew on April 29, 1931, at 708½ North Quincy street in that city.

The defendant moved to suppress the evidence under count 4 because of an unlawful seizure. However, the ruling on the motion was postponed until the trial of the case, when the fourth count was dismissed. Two of the assignments of error are relied upon for reversal; and they are: (1) That the trial court admitted evidence of other offenses; and (2) that the Assistant United States Attorney used language in his argument equivalent to an assertion that the defendant did not testify in his own behalf.

1. The evidence supporting the first three accusations should be noticed. The witness Houston testified to the purchase of whisky from the defendant on April 20th. On that day, he said: "I bought two gallons of whisky from Fred Hood, the deal being made by me calling him over the telephone and ordering it. I knew I could call him over the 'phone and buy whisky because he had

been at my house and told me to * * * he told me at any time I wanted one or two gallons I could call him. He gave me his telephone number but I do not remember the number now. * * * The whisky was delivered to me on the 20th of April and I was arrested about fifteen minutes after the whisky was delivered. I was arrested by officers Jack Stegall and W. F. Jones of the City of Tulsa." He also said that he advised the officers of his arrangement with Fred Hood.

Officer Stegall testified, referring to Houston: "He furnished me with the telephone number which I called. I told the party answering the 'phone I wanted him to meet me at three. That was the way I was given to specify the time of the day instead of the number of gallons. He said, 'In a few minutes.' * * * At the time I called the telephone number a man's voice answered the 'phone. I asked for Fred and this voice says, 'Yes,' I said, 'Can you come at three?' And he said, 'In a few minutes.' The name I gave when I was talking over the 'phone was Houston. At the time I was at the police station. * * * I later found out the number given me was Fred Hood's number. * * * I verified this from the telephone office."

The officer Stegall testified he took the number Houston gave him which was Hood's house, called for three gallons of whisky by code to be delivered at Houston's home, and Strickland drove up in a car belonging to Hood's mother with the three gallons of whisky.

The witness Spargher testified to the transactions of which appellant complains. He stated he purchased of defendant a pint of whisky and two or three bottles of homebrew about ten days prior to April 29th, on which later date the defendant was arrested by the officers. The witness also fixed the date as maybe three or four weeks before the arrest. He further stated that on April 29th he had some negotiations with the defendant in which he told defendant he wanted a pint of liquor, but did not recall the defendant's answer, and at that point the officers came upon the scene. The inquiry presented is whether these transactions were erroneously admitted in evidence.

In this case, the questioned evidence had a close relation to the charges laid in the indictment. The first transaction related by Spargher certainly tends to establish the alleged possession of intoxicating liquor on April 20, 1931. If about or before that date the defendant was selling whisky and home-

brew to Spargher, it reasonably tends to show he possessed and had on hand a supply of whisky on April 20th. The second transaction of April 29th, in which there were the negotiations for a sale, was but ten days later. It bore materially on the charge that he had possessed whisky on April 20th.

It is a general rule that, in a prosecution for a particular crime, other independent offenses are irrelevant and inadmissible. Coulston v. United States (C. C. A.) 51 F.(2d) 178; 16 C. J. 586. But there are exceptions to the rule. One of them was stated in Doyle v. United States (C. C. A.) 33 F.(2d) 265, 266, to occur where the other offenses "are so related to the main issue, or are part of the surrounding circumstances in respect to time and character, as to aid in its solution," and it was added, "considerable discretion is allowed the trial judge in deciding whether such evidence tends in some degree, at least, to corroborate the other evidence." In Grantello v. United States (C. C. A.) 3 F.(2d) 117, 119, it was held that like offenses were inadmissible against a defendant "where no question of his intent is in issue," and "no connection between such offenses and those charged is proved."

In the case of Petroff v. United States (C. C. A.) 13 F.(2d) 453, a different and subsequent transaction occurring ten days later was ruled to be inadmissible as tending to show a propensity to commit crimes of the same or a different class, but not too remote in tending to show, in connection with the facts and circumstances, that defendant was on the prior date engaged in possession and selling liquor, and had the equipment and means for so doing, and it was said to aid in determining the truth of the transaction charged. In Myers v. United States (C. C. A.) 49 F.(2d) 230, the discovery of liquor in defendant's possession one day after the date of the charge was held admissible to corroborate the direct evidence that he was engaged in the liquor traffic; and the Petroff Case was cited as a precedent.

In Johnston v. United States (C. C. A. 9) 22 F.(2d) 1, 5, the court says: "The general rule is unquestioned that, when a defendant is put on trial for one offense, evidence of a distinct offense unconnected with that laid in the indictment is not admissible. While this is the general rule, the exceptions are so numerous that it has been said: 'It is difficult to determine which is the more extensive, the doctrine or the acknowledged exceptions.' * * * It does not apply where the evidence of the other offense directly tends

to prove the crime charged in the indictment * * * or when it is so connected and intermingled with the crime charged as to form one entire transaction, and proof of one involves proof of the other."

And the court further says: "Evidence which is relevant is not rendered inadmissible because it proves or tends to prove another and distinct offense."

In Moore v. United States, 150 U. S. 57, 14 S. Ct. 26, 37 L. Ed. 996, the court makes the following comment: "When the tendency of testimony offered in a criminal case is to throw light upon a particular fact, or to explain the conduct of a particular person, there is a certain discretion on the part of the trial judge which a court of errors will not interfere with, unless it manifestly appears that the testimony has no legitimate bearing upon the question at issue, and is calculated to prejudice the accused in the minds of the jurors."

And the court further holds: "We think it was within the discretion of the court to admit the testimony in dispute of Kitty Young. As intimated in the case of Alexander v. U. S., 138 U. S. 353, 11 S. Ct. 350 [34 L. Ed. 954], where the question relates to the tendency of certain testimony to throw light upon a particular fact, or to explain the conduct of a particular person, there is a certain discretion on the part of the trial judge which a court of errors will not interfere with, unless it manifestly appear that the testimony has no legitimate bearing upon the question at issue, and is calculated to prejudice the accused in the minds of the jurors. There are many circumstances connected with a trial, the pertinency of which a judge who has listened to the testimony, and observed the conduct of the parties and witnesses, is better able to estimate the value of than an appellate court, which is confined in its examination to the very words of the witnesses, perhaps imperfectly taken down by the reporter." See, also, Astwood v. United States (C. C. A.) 1 F.(2d) 639; Brown v. United States (C. C. A.) 265 F. 623; Hosier v. United States (C. C. A.) 260 F. 155; Lueders v. United States (C. C. A.) 210 F. 419.

Our conclusion is that, under the circumstances shown in this case, it was not error to receive the evidence in question.

■ 2. The prosecuting attorney was forbidden to comment in his argument on the fact that the defendant did not testify in the case. It was the privilege of the defendant to be a witness, but his failure so to do created no presumption against him. Title 28, c. 17, § 632, U. S. Code (28 USCA § 632). If the prosecuting attorney made such comment and it was not condemned by the court, it was reversible error. Wilson v. United States, 149 U. S. 60, 13 S. Ct. 765, 37 L. Ed. 650. But the statement of the prosecuting attorney was only that Spargher testified he bought whisky and home-brew of the defendant, and he added: "Who says he didn't do it? Who denies——." This is not tantamount to an assertion that the defendant did not testify to a denial of the transactions. To so construe the remarks, it must have been plain that only the defendant could have disputed the testimony for the government. Shea v. U. S. (C. C. A.) 251 F. 440; Slakoff v. United States (C. C. A.) 8 F.(2d) 9. But it does not appear that no other testimony was available to contradict the witness. On this record, we are of the opinion that this assignment is not well taken.

The judgments in this case should be, and are, affirmed.

LEWIS, Circuit Judge (dissenting).

The appellant (jointly indicted with Ira Strickland) was tried and sentenced to two years imprisonment on count one of an indictment which charged them with possession of five gallons of whisky at 1029 E. Archer street, Tulsa, Oklahoma, on or about the 20th day of April, 1931, to five years imprisonment on count two which charged them with transportation of five gallons of whisky from a place unknown to 1029 E. Archer street, Tulsa, Oklahoma, on or about April 20, 1931, and to six months imprisonment on count three which charged them with a sale of two gallons of whisky to William F. Houston at a certain place, 1029 E. Archer street, Tulsa, Oklahoma, on or about the 20th day of April, 1931. There was a fourth count which charged them with the possession of nineteen pints of intoxicating home brew beer at 708½ North Quincy street, Tulsa, Oklahoma, on or about the 29th day of April, 1931.

As the places of residence of the three parties that have been named have a material bearing on the case when considered with the evidence adduced, I now state that Houston's residence was at 1029 E. Archer street, appellant's at 708 North Quincy street, and Strickland's at 2313 E. Newton street in Tulsa. Thus it is observed the possession count was at Houston's residence, the transportation count was to his residence, the sale count was at his residence, and the possession of the home brew as charged appears to have been at the residence of appellant.

A verified motion to suppress all evidence relative to the fourth count and to return to Hood the nineteen pints of home brew mentioned in that count was based upon the ground, as stated in the motion, that a deputy United States marshal found and seized the home brew in the residence of Hood and his family, that said officer entered said residence without the consent or permission of Hood and without a search warrant, and that the seizure of the said home brew was therefore illegal, and that it and all evidence in connection with its discovery were incompetent and inadmissible as proof. When the case was called for trial appellant's counsel asked the court to hear and rule upon said motion which request was denied by the court, the court stating that the matters raised in the motion would be determined during the progress of the trial. The appellant excepted to that action.

The jury was then impanelled, and the trial proceeded. The assistant district attorney in his opening statement to the jury said that the deputy marshal had seized the home brew at Hood's home, about nineteen bottles, and that one of Hood's customers had bought a pint of whisky and two bottles of home brew beer from Hood. Objections were made by appellant's counsel to these statements of the district attorney. They were overruled. Motion was then made to strike them, and that was overruled, and exceptions were saved.

The first witness called was William F. Houston. He testified that he lived at 1029 E. Archer street, and was living there on the 20th day of April, 1931. He admitted that he had been engaged in the bootlegging business for four or five years, and had been twice convicted theretofore. He testified that prior to April 20th he had made arrangements with Hood, at Hood's suggestion, to buy whisky from Hood at $5.00 a gallon; that by his understanding with Hood if he should telephone Hood "I would like to see him two minutes," that meant Houston wanted two gallons, and if he said "three minutes," that meant he wanted three gallons; and that in this way he bought two gallons of Hood on April 20th, and that prior to that time he had bought two gallons from Hood, who personally delivered it to Houston, but he did not testify who delivered the two gallons on April 20th. Houston did not testify that he paid Hood anything for the whisky.

As Houston's testimony was indispensable to the conviction of Hood, I turn to the testimony of Ira Strickland, co-defendant, who plead guilty to counts one and two, possession and transportation, and was not put on trial. He was called as a defendant's witness and testified that about Christmas time Houston told him he was hauling whisky from Kansas, and he wanted to know if he could plant it at Strickland's house, that he would pay Strickland for keeping it, that he, (Strickland) and Hood were working on seven houses in the neighborhood owned by Mrs. Hood (appellant's mother) and he worked there about forty-eight days, that Houston and he took the five gallons of whisky to Strickland's house, that on the forenoon of April 20th, the day he and Houston were arrested, Houston came over to Strickland's house and put two gallons of the whisky in Houston's car and took it to Houston's house, that Houston asked him how he could later get hold of Strickland, and he gave Houston Fred Hood's telephone number which was in the book. About one o'clock that day Fred Hood's telephone rang, and he, Strickland, answered it. The person on the other end said "This is Bill talking. Come over in about three minutes." Strickland said that he and Houston made up that morning that if Houston wanted the three gallons he would say three minutes; that he went out, got in Mrs. Hood's car, which they had been using in going after material for work, went over to his (Strickland's) house, got the three gallons of whisky and when he got to Houston's house the officers were there and arrested him; that he did not get any whisky from Hood's house; that he never delivered any from Hood's house; that the whisky belonged to Houston; that the five gallons that Houston got that day were at 2313 E. Newton street, where Strickland lived, which was about three quarters of a mile from where Hood lived; that Houston came after the two gallons in the forenoon of April 20th, and he delivered the three gallons in the afternoon of that day; and that he had never before been charged with a like offense.

Police officers arrested Houston and held him at the police station while Strickland was making delivery of the three gallons. When the officers arrested Houston they found two gallons of whisky at his house. They got Hood's telephone number from Houston, called that number from the police station, and said it was Houston telephoning, and asked "if he could come at three." The answer was "in a few minutes." So the officers then went out to Houston's house and Strickland drove up with the three gallons in a car that belonged to Hood's mother. The officer

further testified that in telephoning he asked for Fred. The voice that came back over the telephone was not identified as the voice of Hood. Strickland testified that he was at Hood's house about one o'clock when the telephone rang, that he answered it, and in response took the three gallons from his own house to Houston's house, and the officers there waiting for him arrested him. In fact, the officer who talked over the telephone from the police station testified that he did not know to whom he talked, and could not swear to the voice. He said that he could not say that Strickland did not answer the telephone. The defendant moved that the officer's testimony about the conversation over the telephone be stricken, which was overruled, and exception saved.

After the fourth witness for the prosecution had testified, the court of its own motion dismissed the fourth count of the indictment, which charged possession of home brew beer. Thereupon the prosecution called its fifth witness, who was permitted over objection to testify that about ten days prior to April 29th, which was the day on which Hood was arrested, he was at Hood's house and bought a pint of whisky and two or three bottles of home brew of Hood; that when the officers came to arrest Hood on April 29th he was also there negotiating with Hood for another pint of whisky, and that he bought home brew from Hood three or four weeks before April 29th. All of this testimony was objected to, objections were overruled and exceptions saved.

Over objections of defendant's counsel the district attorney was permitted in his argument to comment on the fact that the witness last referred to had bought a pint of whisky and two or three bottles of home brew beer from Hood. Exceptions were saved to this line of argument.

The court in its instructions to the jury charged with reference to this testimony of the fifth witness about the purchase of a pint of whisky and home brew that the jury might consider that testimony if it shed any light on the charge in the first count of the indictment, to-wit, possession, and to this part of the charge there was objection and exception made in the presence of the jury before it retired.

In my judgment it was prejudicial for the district attorney in his opening statement to refer to the discovery and seizure of the nineteen bottles of home brew beer in the appellant's home. He knew the motion to suppress was pending, he knew its contents, and he must have known it was well taken. He should have asked that it be ruled on before trial, and the court should have done so.

After the fourth count was dismissed the remaining counts contained charges only with reference to whisky, and it was prejudicial error for the court to permit the fifth witness to testify to purchasing a pint of whisky and two or three bottles of home brew beer from the defendant on or about April 20th and to further testify to negotiations by that witness with Hood for the purchase of a pint of whisky on April 29th and the purchase of home brew three or four weeks prior to April 29th. The sale of the beer was a separate and distinct offense, as was the sale of a pint of whisky, from those charged in the indictment, and the testimony concerning them was a violation of the rule of law which was fully discussed by this court in Coulston v. United States, 51 F.(2d) 178. See, also, Grantello v. United States (C. C. A.) 3 F.(2d) 117; Smith v. United States (C. C. A.) 10 F.(2d) 787. There can be no doubt as to the rule that offenses of this character other than those charged are not provable. Nor can I yield my assent to the proposition that a sale of home brew beer could shed any light on the charges in counts one, two, and three, and the court erred in charging the jury that they could consider the sale of the pint of whisky and the sale of the home brew beer on the offense charged in count one of the indictment.

The trial court ruled and the majority opinion seems to hold that the testimony of the fifth witness was competent as shedding light on the charge in the first count. They cite Petroff v. United States (C. C. A.) 13 F.(2d) 453. There the first count charged the sale of intoxicating liquor on July 29th, and the second count possession on August 8th following. The court ruled that it was competent on the sale count to prove that the defendant's premises were searched on August 8th and on that day intoxicating liquors were found concealed in a secret dugout under the hay mow in defendant's barn to the extent of a large number of barrels containing in the aggregate 180 gallons. They also cite Myers v. United States (C. C. A.) 49 F.(2d) 230, in which the defendant was indicted only for selling intoxicating liquor. The court held it competent for the prosecution to prove that the day after the sale the officers obtained a search warrant, searched the defendant's premises, and found forty-three gallons in one gallon cans hidden in a

secret compartment in defendant's kitchen. I am unable to see that either of these cases has any application to the facts in this case. There is no evidence from any witness that any whisky was ever found in Hood's home. In fact, he is not charged with possession at his home. It is charged that Hood had five gallons of whisky at 1029 E. Archer street, which was the home of Houston. How then could the purchase of the pint of whisky and two or three bottles of home brew from Hood at his home have any tendency to support the charge of possession? In the two cases just cited it appears that whisky in large quantities was hidden away at the defendant's home and was being permanently kept there from which sales were probably made. Moreover, as I read this record there is no evidence as charged in the second count that Hood on or about April 20th, 1931, or at any other time, transported whisky to 1029 E. Archer street, Houston's home. Houston testified that on that day he bought two gallons of whisky from Hood in a conversation over the telephone. He does not testify that Hood delivered whisky to him at his home on that day. He does testify that prior to that day (how long is not stated) he bought two gallons from Hood and that Hood delivered it to him personally. He does not testify who delivered the two gallons to him which he got on April 20th. Strickland testified that Houston got two gallons out of Strickland's house that had been stored by Houston, on the forenoon of that day, and that Houston took that two gallons to his home. Houston does not deny Strickland's testimony in that respect. He does deny that he had whisky stored at Strickland's home. Again, the third count charges the commission of an offense at Houston's home, to-wit, 1029 E. Archer street, a sale of two gallons of whisky to Houston.

It was prejudicial error to permit the district attorney in his closing argument to the jury to again comment on the testimony of said witness that he had purchased a pint of whisky and home brew beer from the defendant.

The three offenses charged in the three counts were definite and specific, and the court should have confined the testimony to those charges. The same rules of law are to be applied to a case of this character that apply to all other criminal cases, and unless they are adhered to there will be utter confusion and contradiction in its administration. I, therefore, think the judgment on each of the three counts should be reversed.